COMMONWEALTH of Pennsylvania,
Appellee,

v.

Manuel VALENTIN, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 24, 2000.
Filed March 3, 2000.

John Packel, Philadelphia, for appellant.

Catherine L. Marshall, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before JOHNSON, CERCONE and OLSZEWSKI, JJ.

JOHNSON, J.:

¶ 1 Manuel Valentin appeals from the judgment of sentence following his conviction for possession of a controlled substance. 35 P.S. § 780–113(a)(16). Valentin argues that he was detained without probable cause or reasonable suspicion and that he was illegally frisked. After study, we conclude that all of Valentin's claims lack merit. Thus, we affirm the judgment of sentence.

¶ 2 The facts of this case, as determined by the suppression hearing judge, the Honorable Sheila Woods–Skipper, arise out of a drug sale made in the 2700 block of Hope Street in Philadelphia (2700 block). On September 19, 1998, Officer Ruane, who was in uniform at the time, set up surveillance in the 2700 block based on its notorious reputation for open drug sales. At approximately 4:00 p.m. under excellent lighting conditions, he observed a man handing U.S. currency to Valentin followed by Valentin handing small objects to the man. Officer Ruane, believing that this was a narcotics transaction, detained Valentin. At the time Officer Ruane detained Valentin, Valentin said, "I have two bags of dope in my pocket." Ruane's partner, Officer DiPasquale, removed packets of heroin from Valentin's pocket. The officers placed Valentin under arrest. Following his arrest, $110 dollars in U.S. currency was recovered from Valentin's person.

¶ 3 Judge Woods–Skipper concluded that Officer Ruane had reasonable suspicion to conduct an investigatory stop and that the drugs were removed from Valentin's person without illegal police conduct. Judge Woods–Skipper found Ruane's testimony credible because Officer Ruane had been a police officer for five years and specifically, had been in the 2700 block for three years on a foot beat. Officer Ruane had observed approximately thirty drug sales in the 2700 block. Judge Woods–Skipper denied Valentin's motion to suppress the physical evidence as well as Valentin's statements. Valentin waived his

right to trial by jury. After a bench trial, Judge Woods–Skipper found Valentin guilty of possessing a controlled substance. Judge Woods–Skipper sentenced Valentin to one year of probation. Valentin filed this appeal.

¶ 4 Valentin raises one issue for our review:

> Was not the search of appellant conducted without probable cause or reasonable suspicion where the officer observed a single exchange of small objects for money and where there were no facts that would support a conclusion that appellant was armed or dangerous, thus requiring suppression under the search and seizure provisions of the United States and Pennsylvania Constitutions of not only the physical evidence, but of the on-the-scene statements of appellant as well?

Brief for Appellant at 3.

¶ 5 When reviewing a suppression court's order denying a motion to suppress:

> [w]e must first ascertain whether the record supports the factual findings of the suppression court, and then determine the reasonableness of the inferences and legal conclusions drawn therefrom. In reviewing the denial of a motion to suppress evidence, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the evidence supports the suppression court's findings of fact on a motion to suppress, this Court may reverse only when the legal conclusions drawn from those facts are erroneous. However, we are bound by the trial court's findings of fact only to the extent that they are supported by the record.

*Commonwealth v. Long,* 455 Pa.Super. 337, 688 A.2d 198, 199–200 (1996) (internal citations and internal quotation marks omitted). Furthermore, in making its findings of fact, it is within the sole province of the suppression court to weigh the credibility of witnesses. *See Commonwealth v. Quiles,* 422 Pa.Super. 153, 619 A.2d 291, 292 (1993). As part of that process, the suppression court is entitled to believe all, part, or none of the evidence before it. *Id.*

¶ 6 Valentin argues that the stop, search, and arrest to which the officers subjected him violated the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania. Our Supreme Court has recognized Article 1, Section 8, of the Pennsylvania Constitution as a source of greater protection against unreasonable search and seizure than the Fourth Amendment of the United States Constitution. *See Commonwealth v. Matos,* 543 Pa. 449, 672 A.2d 769, 773 (1996); *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887, 896–901 (1991). While the sole purpose of the exclusionary rule under the Fourth Amendment is to deter police misconduct, Article 1, Section 8, is meant to embody a strong, abiding, and distinctive notion of privacy. *See id.* Because Article 1, Section 8 grants more expansive rights than the Fourth Amendment, if the Pennsylvania Constitution does not require suppression of the evidence, the United States Constitution necessarily does not require suppression. As such, we base this decision on bona fide separate, adequate, and independent state grounds. *See Michigan v. Long,* 463 U.S. 1032, 1041, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). Federal cases are being used only for the purpose of guidance and do not themselves compel the result that we have reached in this case. *See id.* Our decision in this case rests squarely upon Pennsylvania jurisprudence. *See id.; Edmunds,* 586 A.2d at 895.

¶ 7 Valentin argues that the stop was custodial in nature and that Officer Ruane did not have the requisite probable cause to detain Valentin. Alternatively, Valentin argues that the stop was investigatory in nature and that Officer Ruane lacked rea-

sonable suspicion. This Court has stated that the following factors should be considered in determining whether a particular detention is investigatory or custodial in nature:

the basis for the detention (the crime suspected and the grounds for suspicion); the duration of the detention; the location of the detention (public or private); whether the suspect was transported against his will (how far, why); the method of detention; the show, threat or use of force; and, the investigative methods used to confirm or dispel suspicions.

*Commonwealth v. Schatzel*, 724 A.2d 362, 365 (Pa.Super.1998) (quoting *Commonwealth v. Gommer*, 445 Pa.Super. 571, 665 A.2d 1269, 1274 (1995)). Valentin asserts that the detention in this case was custodial in nature because Officer Ruane "before asking any questions, physically grabbed appellant and ordered him to put his hands on a car." Brief for Appellant at 9.

■ ¶ 8 After reviewing the record, we conclude that the fact that Officer Ruane held Valentin's clothing during the detention and the fact that Officer Ruane directed Valentin to place his hands on a car nearby do not render this detention the functional equivalent of an arrest. Officer Ruane was on surveillance in an area of high drug activity where he observed what his experience told him was a drug sale. Officer Ruane and Officer DiPasquale detained Valentin briefly on a public street. They refrained from interrogation. They did not display their weapons, make any threats in detaining Valentin, or transport Valentin against his will. Consequently, we determine that Valentin's seizure was more analogous to an investigatory detention than to a formal arrest. *See Schatzel*, 724 A.2d at 365. Therefore, because the stop was not custodial, we apply the reasonable suspicion standard.

■ ¶ 9 Valentin argues that Officer Ruane did not have reasonable suspicion to stop him and that the officers frisked him in violation of *Terry v. Ohio*, 392 U.S. 1, 88

S.Ct. 1868, 20 L.Ed.2d 889 (1968). If the interaction between the police and a citizen rises to the level of an investigatory detention, the police must possess reasonable suspicion that criminal activity was afoot. *See Terry*, 392 U.S. at 30, 88 S.Ct. 1868; *Commonwealth v. Lewis*, 535 Pa. 501, 636 A.2d 619, 623 (1994). "In order to demonstrate reasonable suspicion [to conduct a *Terry* stop], the police officer must be able to point to specific and articulable facts and reasonable inferences drawn from those facts in light of the officer's experience." *Commonwealth v. Cook*, 558 Pa. 50, 735 A.2d 673, 677 (1999). This Court has noted that:

"[r]easonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause."

*Commonwealth v. Campbell*, 418 Pa.Super. 391, 614 A.2d 692, 696 (1992) (quoting *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)). Moreover, we have recognized that we must take into account " 'the totality of the circumstances' " and " 'the fluid nature of events as they were perceived by the officers at the time.' " *Id.* (quoting *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *Commonwealth v. Epps*, 415 Pa.Super. 231, 608 A.2d 1095, 1097 (1992) (respectively)). In addition, after an officer has effectuated a stop, the officer may perform a *Terry* frisk if he has "a reasonable suspicion, based on specific and articulable facts, that the detained individual may be armed and dangerous." *Commonwealth v. Stevenson*, 744 A.2d 1261, 1264, 2000 Pa. Lexis 167, at *7 (2000).

■ ¶ 10 Here, the record establishes that Officer Ruane had made many narcot-

ics arrests and was familiar with the drug trafficking that regularly took place in the 2700 block. On the day of Valentin's arrest, Officer Ruane had staked out a location in the 2700 block for surveillance based on its notorious reputation for open drug sales. He observed an exchange of cash for small objects, which appeared to him, in light of his experience, to be a drug sale. Officer Ruane then conducted an investigatory stop. It was not legal error for Judge Woods–Skipper to conclude that under these circumstances, Officer Ruane based his investigatory stop of Valentin on reasonable suspicion.

¶ 11 At the suppression hearing, Officer Ruane presented the following testimony, which was uncontradicted by any other evidence presented at the hearing:

> We approached the defendant. I asked the defendant to put his hands on the car that was right near him. We were now in the street, we weren't on the sidewalk. We were just south of 2728 Hope Street, and he was still facing me, when he stated that, "I have two bags of dope in my pocket."
>
> At that time I was holding onto him, and Officer DiPasquale recovered from his pocket two blue glassine packets stamped with the words, "White House," sealed in a clear plastic, which I've come in contact with these same packets numerous times.

N.T. Suppression Hearing, 4/27/99, at 8–9. The record fails to establish that either officer conducted a frisk of Valentin. Rather, Valentin's admission, "I have two bags of dope in my pocket," N.T. Suppression Hearing, 4/27/99, at 8, gave rise to probable cause. Probable cause to arrest exists where "the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Commonwealth v. Gwynn*, 555

Pa. 86, 723 A.2d 143, 148 (1998). We conclude that Valentin's admission was sufficient to fashion probable cause to arrest in this case. Thus, we further conclude that the search of Valentin's pockets, which followed his admission, was made incident to lawful arrest.

¶ 12 We conclude that the detention of Valentin was supported by reasonable suspicion and that the search of Valentin was properly based on probable cause. Therefore, the police action in this case did not violate Article I, Section 8 of the Pennsylvania Constitution. Consequently, Judge Woods–Skipper did not err in reaching her legal conclusions in this case. Accordingly, we affirm the judgment of sentence.

¶ 13 Judgment of sentence **AFFIRMED**.