J-A25019-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| JOSE MARTINEZ | |
| Appellee | No. 3258 EDA 2014 |

Appeal from the Order October 21, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003211-2014

BEFORE: DONOHUE, J., MUNDY, J., and FITZGERALD, J.[*]

MEMORANDUM BY MUNDY, J.: **FILED SEPTEMBER 17, 2015**

The Commonwealth appeals[1] from the October 21, 2014 order granting the motion to suppress filed by Appellee, Jose Martinez.[2] After careful review, we reverse and remand for further proceedings.

The trial court summarized the relevant factual and procedural history of this case as follows.

> On October 23, 2013, around 11:00 a.m., Philadelphia Police Officer Brian Myers (Officer [Myers]) was conducting surveillance of 7221 Lynford Street, Philadelphia, Pa. Around that time,

---

[*] Former Justice specially assigned to the Superior Court.

[1] The Commonwealth has certified in its notice of appeal that the trial court's order terminates or substantially handicaps its prosecution pursuant to Pennsylvania Rule of Appellate Procedure 311(d).

[2] We note that Appellee has elected not to file a brief in this matter.

he observed [Appellee], a Hispanic male, exit from the rear of 7221 Lynford Street wearing a black-hooded sweatshirt and gray sweatpants. Officer [Myers] followed [Appellee] on foot. While walking, [Appellee] had a cell phone up to his ear, looking and walking in all directions. After about five (5) minutes, [Appellee] stopped at the 7200 block of Rutland Street, where he met with an unknown Hispanic Male. [Appellee] had a brief conversation with the Hispanic Male. The Hispanic Male then gave [Appellee] money, whereupon [Appellee] handed the Hispanic Male an unknown hand-sized object.

After this exchange, [Appellee] and the Hispanic Male parted ways. Officer [Myers] continued to follow [Appellee] as he walked in circles around the area, changed directions several times, and continued to look all around, while heading back to 7221 Lynford Street. At that time, Officer [Myers] notified back-up to come to the area and assist with the surveillance. Philadelphia Police Officer Woertz (Officer Woertz) set-up surveillance in front of the property and Officer [Myers] remained at the back exit.

A few hours later, Officer Woertz observed [Appellee]'s wife, Suleica Martinez, exit the property through the front door. She entered a black Lexus that was parked in the front of the property and drove to a beauty salon a few blocks away, on Knorr and Rutland streets. Shortly after, between 3:00-4:00 p.m., [Appellee] exited the property through the front door, this time wearing a red-hooded sweatshirt. Again, [Appellee] had his cell phone up to his ear and was looking and walking in all different directions. For about ten (10) to fifteen (15) minutes [Appellee] walked up and down Castor Avenue, and eventually made his way to the same beauty salon his wife was seen entering earlier. [Appellee] entered the black Lexus parked in front of the salon and drove off.

Police Officers continued to follow [Appellee]. After following [Appellee] for a few minutes,

[Appellee]'s driving techniques changed; [Appellee] began to speed up, make quick turns, and drive in circles. After about five (5) to ten (10) minutes, Philadelphia Police Officer Christopher McCue (Officer McCue) pulled [Appellee] over around the 7100 block of Lynford Street. Officer McCue testified that … as he approached the vehicle he saw [Appellee] reaching … towards the glove box; Officer McCue immediately informed Officer [Myers] of this observation. When Officer [Myers] came to the car moments later he opened the glove box and observed (2) rectangular shaped objects, wrapped in paper, which he recognized as racks of heroin. Officer [Myers] testified that at that point he left the racks there and closed the car door.

Thereafter, [Appellee] was detained and [p]olice [o]fficers escorted [Appellee] and his vehicle back to 7221 Lynford Street. Fearing that someone inside 7221 Lynford Street might destroy evidence, Police Officers secured the property while [Appellee] was sitting outside in a police vehicle. Police [o]fficers used keys that were on [Appellee]'s person to enter the property, [Appellee] did not consent. First, the officers knocked on the door; when no one answered they entered the property. Upon entering the property, the alarm went off and [p]olice [o]fficers conducted a cursory sweep to ensure that no one else was in the residence. They did not find anyone in the property. At that point, Officer [Myers] left the scene to secure a search warrant for both the house and [Appellee]'s vehicle while his brother officers waited inside the residence for him to return with the warrants.

Upon Officer [Myers]'s return, the search warrants for the residence and the vehicle were executed at 7:10 p.m. and 7:45 p.m.[,] respectively. From the search of the vehicle[,] officers recovered the two (2) racks of heroin, a total of 280 packets. From the search of the house[,] officers recovered over 4,000 packets of heroin found under the kitchen sink. Additionally, $255.00 and one (1) key with a Donald Duck picture were recovered from

- 3 -

> [Appellee]'s person. [Appellee] was not given a
> ticket for any traffic violations resulting from the car
> stop.

Trial Court Opinion, 2/25/15, at 2-4 (internal citations and footnotes omitted).

On March 28, 2014, the Commonwealth filed an information, charging Appellee with one count each of possession with intent to deliver, possession of a controlled substance, and possession of drug paraphernalia.[3] On May 27, 2014, Appellee filed a motion to suppress. The trial court conducted suppression hearings on September 29 and October 21, 2014, at which Officer Myers, Officer McCue, and Sergeant Robert Fril, who is Officer Myers' supervisor, testified. Appellee called his wife Suleica Martinez to testify. On October 21, 2014, the trial court entered an order granting Appellee's motion to suppress. On November 20, 2014, the Commonwealth filed a timely notice of appeal.[4]

On appeal, the Commonwealth presents one issue for our review.

> Whether the [trial] court erred in suppressing
> evidence obtained pursuant to a lawful stop and a

_____

[3] 35 P.S. §§ 780-113(a)(30), 780-113(a)(16) and 780-113(a)(32), respectively.

[4] Concurrently with its notice of appeal, the Commonwealth filed a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). The trial court filed its Rule 1925(a) opinion on February 25, 2015.

> ***Terry***[5] frisk, and by a subsequent lawful search with a search warrant, on the ground that the stop was supposedly not supported by reasonable suspicion?

Commonwealth's Brief at 4.

We begin by noting our well-settled standard of review.

> When the Commonwealth appeals from a suppression order, this Court may consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the record as a whole, remains uncontradicted. In our review, we are not bound by the suppression court's conclusions of law, and we must determine if the suppression court properly applied the law to the facts. We defer to the suppression court's findings of fact because, as the finder of fact, it is the suppression court's prerogative to pass on the credibility of the witnesses and the weight to be given to their testimony.

***Commonwealth v. Hudson***, 92 A.3d 1235, 1241 (Pa. Super. 2014) (internal quotation marks and citations omitted), *appeal denied*, 106 A.3d 724 (Pa. 2014).

> The Fourth Amendment of the Federal Constitution provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated …." U.S. Const. amend. IV. Likewise, Article I, Section 8 of the Pennsylvania Constitution states, "[t]he people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures …." Pa. Const. Art. I, § 8. Under Pennsylvania law, there are three

---

[5] ***Terry v. Ohio***, 392 U.S. 1 (1968).

levels of encounter that aid courts in conducting search and seizure analyses.

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

**Commonwealth v. Williams**, 73 A.3d 609, 613 (Pa. Super. 2013) (citation omitted), *appeal denied*, 87 A.3d 320 (Pa. 2014).[6]

> …

> "The Fourth Amendment permits brief investigative stops … when a law enforcement officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity." **Navarette v. California**, 134 S. Ct. 1683, 1687 (2014). It is axiomatic that to establish reasonable suspicion, an officer "must be able to articulate something more than an inchoate and unparticularized suspicion or hunch." **United States v. Sokolow**, 490 U.S. 1, 7 (1989) (internal quotation marks and citation omitted). Unlike the other amendments pertaining to criminal proceedings, the Fourth Amendment is unique as it has standards built into its text, *i.e.*, reasonableness and probable cause. **See generally** U.S. Const.

---

[6] We note that the Commonwealth and Appellee agreed that the initial encounter here was an investigative detention and that reasonable suspicion is the correct standard. Commonwealth's Brief at 16; Appellee's Motion to Suppress, 5/27/14, at 2.

- 6 -

amend. IV. However, as the Supreme Court has long recognized, **Terry v. Ohio**, 392 U.S. 1 (1968) is an exception to the textual standard of probable cause. **Florida v. Royer**, 460 U.S. 491, 498 (1983). A suppression court is required to "take[] into account the totality of the circumstances—the whole picture." **Navarette**, **supra** (internal quotation marks and citation omitted). When conducting a **Terry** analysis, it is incumbent on the suppression court to inquire, based on all of the circumstances known to the officer *ex ante*, whether an objective basis for the seizure was present. **Adams v. Williams**, 407 U.S. 143, 146 (1972).

**Commonwealth v. Carter**, 105 A.3d 765, 768-769 (Pa. Super. 2014) (*en banc*), *appeal denied*, 117 A.3d 295 (Pa. 2015).

In this case, Officer Myers testified that on October 23, 2013, at about 11:00 a.m., he was conducting surveillance on 7221 Lynford Street when he observed Appellee emerging from said residence. N.T., 9/29/14, at 23-24. Officer Myers followed Appellee, noticing that he was looking in every direction while on his cell phone and constantly changing directions. **Id.** at 25. After five minutes, Officer Myers followed Appellee to the 7200 block of Rutland Street where he saw Appellee meet another male. **Id.** Officer Myers observed the male hand Appellee cash, and in exchange Appellee handed the male an object. **Id.** The two departed in different directions after this exchange. **Id.** Officer Myers continued to follow Appellee, who again walked in circles, constantly looking around and changing directions. **Id.** Officer Myers observed Appellee walk back to 7221 Lynford Street, using a key to enter the front door. **Id.**

A few hours later, Appellee again left the residence on his cell phone, looking in all directions. *Id.* at 26. Appellee walked up and down Castor Avenue, looking in all directions for approximately ten to fifteen minutes. *Id.* at 27. Eventually, Appellee walked to a beauty salon on Castor Avenue where his wife had been seen driving to in a black Lexus earlier. *Id.* at 26, 27. Appellee got into said black Lexus and left the salon area. *Id.* at 28. Officer Myers followed Appellee and observed Appellee "speed up and make quick turns[]" for about five to ten minutes. *Id.* Officer Myers directed other officers ahead of him to stop Appellee's vehicle, which they did. *Id.* at 29. Officer McCue told Officer Myers that upon stopping Appellee's vehicle, he observed Appellee reach towards the glove compartment. *Id.* Officer Myers went to the vehicle, opened the glove box, and found two rectangular, paper-wrapped objects, which he believed to be racks of heroin. *Id.*

Officer Myers left the racks in the glove compartment, and the police escorted Appellee and the vehicle back to 7221 Lynford Street. *Id.* at 35. At this time, the officers used Appellee's keys to enter the property and secure it pending the issuance of search warrants for the house and the vehicle. *Id.* at 35-37. Officer Myers returned with search warrants for both the house and the vehicle. *Id.* at 39. The search of the vehicle revealed the two racks that Office Myers had previously observed, containing 280 packets of heroin. *Id.* at 42. During their search of the home, the police discovered over 4,000 packets of heroin. *Id.* at 144.

In this case, we conclude that Officer Myers had reasonable suspicion to stop Appellee. Officer Myers, who had 16 years' experience in narcotics, personally observed Appellee engage in a hand-to-hand transaction with another male for cash, after acting evasive before and after the same. *Id.* at 25, 43. This was objectively sufficient for Officer Myers to reasonably suspect that criminal activity was afoot. *See Commonwealth v. Daniels*, 999 A.2d 590, 597 (Pa. Super. 2010) (concluding officer had reasonable suspicion of drug activity where the officer "witnessed [a male] walk up to [Daniels'] car, reach through the window, and hand [Daniels] what appeared to be United States currency in exchange for a small item[]"); *Commonwealth v. Valentin*, 748 A.2d 711, 714-715 (Pa. Super. 2000) (concluding officer had reasonable suspicion of drug activity where the officer "observed an exchange of cash for small objects, which appeared to him, in light of his experience, to be a drug sale[]").

The trial court concluded that the initial stop was unconstitutional because the police did not have "confirmation" that a drug transaction occurred, particularly because there was nothing in the record to suggest that the police stopped the other male to see if he had drugs. Trial Court Opinion, 2/25/15, at 7. Although such additional evidence would have strengthened the Commonwealth's case, it was not constitutionally required. Reasonable suspicion, by its very nature, does not require confirmation or corroboration, with few exceptions not relevant here. *See Navarette*,

*supra* (stating, "the level of suspicion the [*Terry*] standard requires is **considerably less** than proof of wrongdoing by a preponderance of the evidence[]") (internal quotation marks omitted; emphasis added), *quoting* **Sokolow**, *supra*. Based on all of the aforementioned considerations, we conclude that Appellee's Fourth Amendment rights were not violated by the initial stop of his vehicle.

The Commonwealth next argues that Officer Myers was permitted to conduct a limited search of the glove compartment of Appellee's vehicle during said traffic stop. Commonwealth's Brief at 24. The trial court did not address this argument, as it concluded the initial stop was itself unconstitutional. However, as Appellee did raise this issue in his motion to suppress, we address it herein. The Commonwealth argues that Officer Myers had reasonable suspicion to conduct a limited search of the glove compartment for officer safety. *Id.*

The Supreme Court has permitted limited searches of vehicles of vicinities within the defendant's reach if the police have reasonable suspicion that a weapon is present. **Michigan v. Long**, 463 U.S. 1032, 1049-1050 (1983).

> Our past cases indicate … that protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect. These principles compel our conclusion that the search of

the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. "[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." If a suspect is "dangerous," he is no less dangerous simply because he is not arrested.

*Id.* (internal citations omitted). This standard applies to Article I, Section 8 of the Pennsylvania Constitution as well. ***Commonwealth v. Morris***, 644 A.2d 721, 724 n.3 (Pa. 1994), *cert. denied*, ***Morris v. Pennsylvania***, 513 U.S. 1031 (1994); ***Commonwealth v. Cartagena***, 63 A.3d 294, 299 (Pa. Super. 2013) (*en banc*), *appeal denied*, 70 A.3d 808 (Pa. 2013).

As we have explained above, Officer Myers had reasonable suspicion to stop Appellee insofar that he suspected criminal activity was afoot regarding the drug transaction he witnessed. Upon stopping Appellee's vehicle, Officer McCue observed Appellee reach for the glove compartment and relayed this information to Officer Myers. N.T., 9/29/14, at 29. In our view, this supplied Officer Myers with the reasonable suspicion necessary to conduct a limited search of the glove compartment, the area at which Appellee's furtive

movement were aimed.[7] *See Commonwealth v. Foglia*, 979 A.2d 357, 361 (Pa. Super. 2009) (*en banc*) (stating, "if a suspect engages in hand movements that police know, based on their experience, are associated with the secreting of a weapon, those movements will buttress the legitimacy of a protective weapons search of the location where the hand movements occurred[]"), *appeal denied*, 990 A.2d 727 (Pa. 2010); *Commonwealth v. Buchert*, 68 A.3d 911, 916-917 (Pa. Super. 2013) (concluding a *Long* search permissible based on "[Buchert]'s furtive movement of leaning forward and appearing to conceal something under his seat, along with his extreme nervousness and the night time stop[]"), *appeal denied*, 83 A.3d 414 (Pa. 2014). Therefore, Officer Myers' limited *Long* search of the glove compartment, and his subsequent observation of the heroin racks, did not violate Appellee's Fourth Amendment rights.

Next, the Commonwealth avers that the trial court erred in concluding the police lacked probable cause to obtain the search warrants for Appellee's vehicle and residence. Commonwealth's Brief at 28-29. The trial court's sole reasoning for this conclusion was that "the search warrants for both the vehicle and the residence [were] invalid because information obtained from

---

[7] We reject the portion of the Commonwealth's argument suggesting that because Officer Myers had reasonable suspicion of drug activity specifically *ex ante*, that bolstered his reasonable suspicion for the *Long* search *ex post*. *See generally* Commonwealth's Brief at 27. Our Supreme Court has instructed that we may not automatically presume that "guns follow drugs[.]" *Commonwealth v. Grahame*, 7 A.3d 810, 811 (Pa. 2010).

the illegal car stop was used to secure those warrants." Trial Court Opinion, 2/25/15, at 10. However, because we have concluded that the initial stop, and subsequent limited search of the glove compartment were constitutional, we conclude the trial court erred in declaring the search warrants invalid as well.[8]

Based on the foregoing, we conclude the trial court erred when it granted Appellee's motion to suppress. **See Hudson**, **supra**. Accordingly, the trial court's October 21, 2014 order is reversed, and the case is remanded for further proceedings, consistent with this memorandum.

Order reversed. Case remanded. Jurisdiction relinquished.

Judge Donohue joins the memorandum.

Justice Fitzgerald noted dissent.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/17/2015

---

[8] The trial court's opinion concluded that the initial entry to the residence to secure it pending the issuance of the search warrant was also unconstitutional, but it "ha[d] no bearing on the legality of the search warrant for the house." Trial Court Opinion, 2/25/15, at 10. Because this was not essential to the trial court's order, and Appellee has not filed a brief arguing to the contrary, we express no opinion on the question.