J-S59015-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| FRANCIS WARREN STOCK | : | |
| | : | No. 2378 EDA 2018 |

Appeal from the Judgment of Sentence Entered June 27, 2018
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0004693-2017

BEFORE:  LAZARUS, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY LAZARUS, J.:                **FILED FEBRUARY 04, 2020**

Francis Warren Stock appeals from the judgment of sentence, entered in the Court of Common Pleas of Delaware County, following his nonjury convictions for possession with intent to deliver heroin,[1] possession with intent to deliver cocaine,[2] possession of a controlled substance,[3] possession of drug paraphernalia,[4] and driving on a suspended license.[5]  Upon careful review, we affirm.

---

[1] 35 P.S. § 780-113(a)(30).

[2] 35 P.S. § 780-113(a)(30).

[3] 35 P.S. § 780-113(a)(16).

[4] 35 P.S. § 780-113(a)(32).

[5] 75 Pa.C.S. § 1543(a).

On May 10, 2017, at approximately 4:00 p.m., Trooper Nicholas Scrivani and Trooper Robert Breyer were conducting undercover surveillance on the 1400 block of Honan Street in the City of Chester.[6] Trooper Scrivani observed a blue Toyota Corolla pull up and park on the west side of that street. A man walked up to the Corolla and had a brief conversation with the driver of the Corolla, later identified as Stock. Trooper Scrivani observed Stock hand the man an undetermined amount of U.S. currency and saw the man reach into the front groin area of his pants and hand Stock an unknown item. Trooper Scrivani observed the top of a plastic bag in the clenched fist holding the unknown item. After handing Stock the unknown item, the man entered an unidentified residence on the same city block. Stock drove away after the exchange.

Trooper Scrivani followed the Corolla and saw it park near Demarco's Market. Trooper Scrivani observed Stock exit the vehicle and enter the store. Trooper Scrivani parked his unmarked vehicle behind the Corolla and approached Stock as he exited the store. As they approached Stock, both Trooper Scrivani and Trooper Breyer wore their police raid vests with their badges hanging from their necks. Trooper Scrivani asked Stock what he purchased on Honan Street. Stock responded that he bought K2 Spice, a

---

[6] At the suppression hearing, Trooper Scrivani described the 1400 block of Honan Street as a "high drug sales area, specifically as it relates to cocaine and heroin." N.T. Suppression Hearing, 1/24/18, at 9. He also testified that people typically pull into the horseshoe-shaped street in their vehicles, and are then typically served and sold drugs in their vehicle. *Id.*

synthetic marijuana; he then pulled out a clear plastic bag from his back pocket, which Trooper Scrivani believed to contain synthetic marijuana.

At this point, Trooper Scrivani placed Stock in handcuffs and advised him he was being detained. Stock denied possessing anything illicit other than the synthetic marijuana. After a vehicle search that did not uncover any illicit materials, Trooper Scrivani conducted a search incident to arrest on Stock. Trooper Scrivani removed Stock's cell phone and approximately $300 in U.S. currency from his pockets. He felt a large bulge in Stock's groin/buttocks area. Trooper Scrivani loosened Stock's belt and pulled back Stock's jeans and underwear. When he looked down Stock's pants, Trooper Scrivani could see the top of a plastic bag protruding from Stock's buttocks. Trooper Scrivani asked Stock if he wanted him to retrieve the item or if Stock wanted to get it. Stock, who was handcuffed behind his back, reached into his pants and pulled out a plastic baggie containing 14 grams of a white powdery substance, which Trooper Scrivani suspected was cocaine, and six bundles of suspected heroin.

On December 20, 2017, Stock filed an omnibus pretrial motion in which he argued that the stop was unreasonable and the drug evidence and statements he made to police should be suppressed. A suppression hearing was held on January 24, 2018. The trial court denied Stock's motion, but did not issue findings of facts or conclusions of law. *See* Pa.R.Crim.P. 581(I). After a nonjury trial, Stock was found guilty of the above offenses. On June 27, 2018, the court sentenced Stock to 6-14 years' incarceration. By a letter dated July 2, 2018, Stock, who was represented by counsel, filed a *pro se*

notice of appeal on July 10, 2018. The court treated this filing as a post-sentence motion and denied the motion on July 10, 2018. Stock's counsel filed a notice of appeal on August 7, 2018, from the denial of this filing.

Before reaching the merits of Stock's claim, we must address the timeliness of his appeal, as it implicates our jurisdiction.[7] A notice of appeal must be filed within 30 days of imposition of sentence or 30 days after entry of an order deciding a post-sentence motion. Pa.R.Crim.P. 720. This time limitation is a fundamental prerequisite of this Court's jurisdiction and must be strictly construed. *Commonwealth v. Riebow*, 445 A.2d 1219, 1220 (Pa. Super. 1982). However, on occasion, we have declined to quash an appeal from a party who has relied upon misinformation conveyed to him by the trial court. *See, e.g.*, *Commonwealth v. Flowers*, 149 A.3d 867, 872 (Pa. Super. 2016) (holding breakdown in court operations granted this Court jurisdiction over untimely appeal where trial court failed to correct counsel's misstatement about deadline for filing appeal and incorrectly noted that appellant had additional thirty days to appeal from order denying motion for reconsideration of sentence imposed upon revocation of intermediate punishment); *Commonwealth v. Patterson*, 940 A.2d 493, 498 (Pa.Super. 2007) (compiling cases in which "courts of this Commonwealth have held that

---

[7] Although neither Stock nor the Commonwealth raises the issue of the timeliness of the appeal, "questions of jurisdiction may be raised *sua sponte*." *Commonwealth v. Lindey*, 760 A.2d 416, 418 (Pa. Super. 2000).

court breakdown occurred where . . . trial court, at . . . time of sentencing, either failed to advise Appellant of . . . post-sentence and appellate rights or misadvised him"); **Commonwealth v. Parlante**, 823 A.2d 927, 929 (Pa. Super. 2003) ("[W]e decline to quash this appeal because [the late appeal] resulted from the trial court's misstatement of the appeal period, which operated as a breakdown in the court's operation.") (internal quotation marks omitted); **Commonwealth v. Coolbaugh**, 770 A.2d 788, 791 (Pa. Super. 2001) (same).

Here, the trial court sentenced Stock on June 27, 2018. The court received Stock's letter, dated July 2, 2018, on July 10, 2018. The court treated the letter as a post-sentence motion and denied the motion on July 10, 2018. The order notified Stock that he had "the right to appeal this Order within thirty days (30) of the date of this Order to the Pennsylvania Superior Court." Trial Court Order, 7/10/18. Stock's counsel then filed a timely notice of appeal on August 7, 2018.

Generally, our courts will not entertain *pro se* filings while an appellant remains represented; such filings have been characterized as legal nullities. **Commonwealth v. Ali**, 10 A.3d 282, 293 (Pa. 2010); **see also Commonwealth v. Ellis**, 626 A.2d 1137, 1139 ("[T]here is no constitutional

right to hybrid representation").[8]  As such, here the court should have noted Stock's letter on the docket, and forwarded it to Stock's counsel.  Pa.R.Crim.P. 516(A)(4); *see also Commonwealth v. Williams*, 151 A.3d 621, 623 (Pa. Super. 2016) ("When a counseled defendant files a *pro se* document, it is noted on the docket and forwarded to counsel.").  The court should not have accepted it as a filing.  Pa.R.Crim.P. 516(A)(4).  The trial court erred when it failed to forward the letter to counsel of record and issued an order responding to Stock's letter.  Therefore, the judgment of sentence was entered on June 27, 2018, and Stock did not file any post-trial motions because the *pro se* letter was a legal nullity.  Stock appealed on August 7, 2018, more than 30 days after the judgment of sentence.  However, as Stock's untimely filing was caused by the trial court misinforming him of the time to file an appeal, we find the untimely filing was caused by a breakdown in the process of the court. *See Flowers, supra*.  Thus, we decline to quash the appeal and shall proceed to address the merit of the issue raised.  *Id.*; *see also Commonwealth v. Rodriguez*, 174 A.3d 1130, 1138-39 (Pa. Super. 2017).

Stock raises one issue for our review.  "Was the trial court in error in denying the issues raised in [Stock's] pretrial omnibus motion and litigated before the court?"  Appellant's Brief, at 4.  Specifically, he argues that the

---

[8] "[T]he proper response to any *pro se* pleading is to refer the pleading to counsel, and to take no further action on the *pro se* pleading unless counsel forwards a motion." *Commonwelath v. Jette*, 23 A.3d 1032, 1044 (Pa. 2011).

police lacked the requisite suspicion for a search and any evidence or statements gathered from the interaction are fruit of the poisonous tree. *Id.* at 26. He also argues that, even if there was the requisite suspicion, the search was conducted in an unreasonable manner. Separately, the Commonwealth urges this Court to remand the case because the trial court did not issue findings of facts or conclusions of law following the suppression hearing. Appellee's Brief, at 1.

We will first address the Commonwealth's concern, as it implicates our ability to conduct meaningful appellate review. As previously stated, the trial court failed to enter findings of fact or conclusions of law following the suppression hearing in accordance with Pennsylvania Rule of Criminal Procedure 581(I). Usually, the absence of findings of fact or conclusions of law by the trial court prevents meaningful appellate review. *See Commonwealth v. Grundza*, 819 A.2d 66, 68 (Pa. Super. 2003) (remanding case and ordering suppression court make findings of fact and conclusions of law and file Pa.R.A.P. 1925(a) opinion). However, "[w]here a trial court fails to abide by Rule 581(I), [] this court may look at the trial court's Rule 1925(a) opinion to garner findings of fact and conclusions of law." *Commonwealth v. Stevenson*, 832 A.2d 1123, 1126 (Pa. Super. 2003).

Here, the trial court issued a Rule 1925(a) opinion. In that opinion, the court cites to the notes of testimony from the suppression hearing in its recitation of the facts. Trial Court Opinion, 6/27/19, at 2-4; *see also in re*

*L.J.*, 79 A.3d 1073, 1085 (Pa. 2013) (appellate review of suppression decisions must be based on record developed during suppression hearing). The court found Trooper Scrivani's testimony to be a credible account of the stop and search and it was consistent with what he testified to at trial. Trial Court Opinion, 6/27/19, at 2. As the court's Rule 1925(a) opinion included findings of facts based upon the suppression hearing testimony, we can conduct meaningful review and will address the substance of Stock's issue.

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Hoppert*, 39 A.3d 358, 361-62 (Pa. Super. 2012) (quoting *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010).

Stock argues that there was no warrant, reasonable suspicion or probable cause to support the search and that even if there was, Trooper Scrivani conducted an unreasonable strip search. To determine if the search was performed with the requisite suspicion, we must analyze two

interactions—the initial interaction where Trooper Scrivani approached Stock and questioned him and the subsequent interaction in which Trooper Scrivnia searched Stock incident to arrest.

There are three levels of police interaction with citizens. ***Commonwealth v. Reed***, 19 A.3d 1163, 1166 (Pa. Super. 2011).

> The first of these [interactions] is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an "investigative detention[,]" must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

***Commonwealth v. Campbell***, 862 A.2d 659, 663 (Pa. Super. 2004). To determine if an interaction is a mere encounter or if a seizure has occurred, a "free to leave" test requires the court to determine if the officers' actions would have communicated to a reasonable person that they were not at liberty to walk away. ***Commonwealth v. Adams***, 205 A.3d 1195, 1199-1200 (Pa. 2019).

The standard for determining whether reasonable suspicion exists is well-settled:

> Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of intrusion warrant a

- 9 -

[person] of reasonable caution in the belief that the action taken was appropriate.

***Commonwealth v. Chambers***, 55 A.3d 1208, 1215 (Pa. Super. 2012) (quoting ***Commonwealth v. Jones***, 874 A.2d 108, 117 (Pa. Super. 2006)).

Whether reasonable suspicion exists at the time of an investigatory detention must be determined by examining the totality of the circumstances. ***Commonwealth v. Cottman***, 764 A.2d 595, 598-99 (Pa. Super. 2000). The defendant's presence in a high crime area supports the existence of reasonable suspicion. ***Commonwealth v. Foglia***, 979 A.2d 357, 361 (Pa. Super. 2009). Furthermore, we have found reasonable suspicion when an officer witnessed an exchange of cash for small objects consistent with known drug sale methods. ***See Commonwealth v. Valentin***, 748 A.2d 711, 715 (Pa. Super. 2000) (officer had reasonable suspicion to stop and search when he witnessed exchange of cash for small objects in area with reputation for drug sales); ***but see Commonwealth v. Banks***, 658 A.2d 752, 753 (Pa. 1995) (officer did not have *probable cause* to stop and detain suspect when he witnessed exchange of unidentified small items for cash and the defendant fled).

By contrast, an arrest or custodial interrogation must be supported by probable cause. ***Chambers***, 55 A.3d at 1215. "Probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent individual in believing that an offense was committed and that the defendant has committed it." ***Commonwealth v. Griffin***, 24 A.3d

- 10 -

1037, 1042 (Pa. Super. 2011) (quoting **Commonwealth v. Stewart**, 740 A.2d 712, 718 (Pa. Super. 2002)). An arresting officer may search a person in order to seize any evidence on the arrestee's person in order to prevent its concealment or destruction. **Commonwealth v. Wilmer**, 194 A.3d 564, 568 n.7 (Pa. 2018).

Trooper Scrivani testified that he approached Stock and asked him what he purchased on Honan Street. N.T. Suppression Hearing, 1/24/18, at 12. Trooper Scrivani wore a vest with "State Police" written on the front and badge indicating he was an officer, but he did not have his weapon visible. **Id.** Trooper Scrivani did not arrest Stock, though he stated that Stock "would not have been free to leave." **Id.** at 30. However, an officer approaching a person and asking a question is not so coercive as to constitute an arrest. **See United States v. Drayton**, 536 U.S. 194, 203-04 (2002) (reasonable person would feel free to leave when officer boards bus and asks passengers questions with no show of force or threat). Thus, we conclude that Trooper Scrivani's initial interaction with Stock was, at most, an investigative detention requiring reasonable suspicion. **Campbell**, 862 A.2d at 663.

Trooper Scrivani testified that people typically pull onto Honan Street and are then sold drug drugs in their vehicles. N.T. Suppression Hearing, 1/24/18, at 9. He testified that Stock performed the same action. He witnessed Stock pass money to another person, who then handed Stock a plastic baggie concealed in his fist. Thus, Trooper Scrivani articulated

sufficient facts giving rise to his reasonable suspicion that a drug deal had just occurred. *See Valentin*, 748 A.2d at 715. However, these facts alone are not sufficient for Trooper Scrivani to have probable cause to arrest Stock. *See Banks*, 658 A.2d at 753.

After being stopped and questioned, Stock showed Trooper Scrivani a bag and claimed it was synthetic marijuana. Statements made during an investigatory detention are admissible at trial. *See Commonwealth v. Kondash*, 808 A.2d 943, 948 (Pa. Super. 2002) (holding investigatory detention does not trigger *Miranda* rights). At this time, Trooper Scrivani had probable cause to believe that Stock possessed a controlled substance and was justified in arresting him. *See Griffin*, 24 A.3d at 1042. Incident to arrest, Trooper Scrivani was permitted to search Stock. *See Wilmer*, 194 A.3d at 568.[9] Thus, the search incident to arrest was also supported by the requisite level of suspicion.

---

[9] Stock argues that the search was a strip search and a cavity search. However, this argument is based on Stock's testimony at the suppression hearing. We must consider the Commonwealth's evidence, and only so much evidence of the defendant that remains uncrontradicted. *Hoppert*, 39 A.3d at 361-62. Trooper Scrivani testified that he merely loosened Stock's pants to look down the back of them. Trial Court Opinion, 6/27/19, at 4 (citing N.T. Suppression Hearing, 1/24/18, at 14). The trial court found Trooper Scrivani did not even reach into Stock's pants, but had Stock retrieve the baggie himself. *Id.* Thus, the claim that Stock was subjected to an unreasonable strip search is meritless.

In sum, Trooper Scrivani first had reasonable suspicion based on his observation of Stock engaging in what he reasonably suspected was a drug deal. *Valentin*, 748 A.2d at 715. Thus, he was permitted to stop Stock and question him. Based on that interaction, Trooper Scrivani had probable cause that Stock possessed a controlled substance when Stock admitted to purchasing K2 Spice and showed the officer a bag of synthetic marijuana. *Griffin*, 24 A.3d at 1042. Thus, Trooper Scrivani was permitted to arrest Stock. The cocaine and heroin were found during a proper search incident to arrest. *Wilner, supra*. Accordingly, the trial court did not err when it denied Stock's omnibus pretrial motion and found Trooper Scrivani's search was supported by the requisite level of suspicion.

Judgment of sentence affirmed.

Judge McLaughlin joins this Memorandum.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/4/20