J-A03017-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PHILLIP SHIVERS | : | |
| | : | |
| Appellant | : | No. 538 EDA 2022 |

Appeal from the Judgment of Sentence Entered January 27, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0005546-2019

BEFORE:   KING, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY SULLIVAN, J.:            **FILED SEPTEMBER 7, 2023**

Phillip Shivers ("Shivers") appeals from the judgment of sentence imposed following the denial of his motion to suppress and his conviction for violations of the Uniform Firearms Act ("VUFA"), resisting arrest, and furnishing false identification to law enforcement.[1]  We affirm.

The trial court summarized the evidence at the suppression hearing, its ruling, and its trial verdict as follows:

> [Shivers] was arrested in the City [of Philadelphia]'s 35th district where Officer [Michael] Sidebotham had been assigned for the entirety of his eleven . . . year career as a police officer.  Officer Sidebotham conducts "gang intelligence" in the area and attempts to associate people with certain groups or gangs in the district". . ..   He testified that he is familiar with the specific location of [Shivers's] arrest, that the area is mostly residential but contains a gas station and a 7-eleven store, that he conducted

---

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. §§ 6105, 6106, 6108, 5104, 4914.

numerous narcotics investigations in the area, that the area has high narcotics and gun activity, that a gang called the "Ozone Gang" operates in the immediate area and "sells narcotics," that the Ozone Gang is known for drug activity and gun violence, and that the Ozone Gang "feud[s]" with another gang in the area. . ..

Around 7:30 p.m. on July 18, 2019, Officer Sidebotham and two fellow officers, Officers Del Ricci and Officer Lutz,[2] were on routine patrol wearing police uniforms and traveling in an unmarked patrol car. The [o]fficers went to the gas station at 5945 Front Street because they "know a lot of the guys that are over there." Upon pulling into the parking lot, Officer Sidebotham saw [Shivers] at the front of the store to the right of several other males, two of whom Officer Sidebotham recognized as "Ozone Gang members." [Shivers] was "right in front of the door" to the gas station, blocking the entranceway to the store. . . .

As the [o]fficers exited the patrol car, [Shivers] started "backing away." When the [o]officers walked closer, [Shivers] "ran through the parking lot and then he ran southbound on Front Street." Officer Sidebotham testified that [Shivers] ran with his hands in front of him, in a manner consistent with people "holding onto a firearm or holding their pants up." Officers Sidebotham and Lutz chased [Shivers] on foot, and Officer Lutz tackled him. While [Shivers] was on the ground, Officer Sidebotham saw the outline of a firearm in [Shivers's] right pants pocket. Officer Sidebotham testified that he had recovered firearms from "hundreds" of suspects and discerned immediately, based on his experience, that the object in [Shivers's] pocket was a firearm. Reaching inside [Shivers's] pants pocket, Officer Sidebotham recovered a .32 caliber handgun. . . .

Based on the above testimony, as well as the body[-]worn camera footage, this [c]ourt denied [Shivers's] suppression motion and ruled that his "unprovoked flight in a high crime area gave the officers reasonable suspicion to pursue and stop him." This [c]ourt further held that "Officer Sidebotham lawfully recovered a firearm from inside the front pocket of [Shivers's] pants." . . .

_____

[2] The officers' first names cannot be determined from the record.

At trial, the Commonwealth again presented the body[-] worn camera footage and testimony of Officer Sidebotham, which mirrored his testimony from the hearing on [Shivers's] suppression motion. At the conclusion of trial, this [c]ourt found [Shivers] guilty of violating Sections 6105, 6106, and 6108 of the Uniform Firearms Act, resisting arrest, and providing false information to a law enforcement officer.

Trial Court Opinion, 4/14/22, at 2-4 (internal citations omitted). The trial court imposed a sentence of three years of probation. *See* N.T., 1/27/22, 9.

Shivers appealed from the judgment of sentence, and he and the trial court complied with Pa.R.A.P. 1925.

On appeal, Shivers presents the following issues for our review:

1. Was there not a lack of reasonable suspicion to justify a seizure under article 1, section 8 of the Pennsylvania Constitution and the Fourth Amendment based solely on the flight in this case in a high crime area?

2. Was not the tackling of [Shivers] in this case violative of federal and state law because it was an intrusion that amounted to an arrest and required probable cause?

Shivers's Brief at 3 (unnecessary capitalization omitted).

Shivers's issues implicate the denial of his suppression motion. Our standard of review of a challenge to a trial court's denial of a suppression motion is limited to determining whether the court's findings of fact are supported by the record and the legal conclusions drawn from those facts are correct. *See Commonwealth v. Thomas*, 273 A.3d 1190, 1195 (Pa. Super. 2022). This Court may only consider the evidence of the prosecution and so much of the defense evidence as remains uncontradicted when read in the context of the record. It is the suppression court's sole province as fact-finder

to pass on the credibility of witnesses and the weight to give their testimony. *See id*. When the record supports the suppression court's factual findings, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions from those facts. *See Commonwealth v. Williams*, 941 A.2d 14, 27 (Pa. Super. 2008) (*en banc*).

Our scope of review is limited to the evidentiary record at the hearing on the pre-trial suppression motion. *See Commonwealth v. Smith*, --- A.3d ---, ---, 1278 WDA 2022 (Pa. Super., August 7, 2023, slip op. at 6). Where an appellant asserts legal error in a suppression court's ruling, it is the Court's duty to determine if the suppression court properly applied the law to the facts. *See id*. at 7.

The law recognizes three distinct levels of interaction between police officers and citizens: (1) a mere encounter, (2) an investigative detention; and (3) a custodial detention. *See Commonwealth v. Barnes*, 296 A.3d 52, 56 (Pa. Super. 2023). A court examines the totality of the circumstances in considering an interaction between officers and citizens and assesses whether a reasonable person would have felt free to leave or otherwise terminate the encounter. *See Commonwealth v. Lyles*, 97 A.3d 298, 302-03 (Pa. 2014). The totality of the circumstances test centers on whether the suspect has in some way been restrained by the show of physical force or coercive authority; a seizure does not occur when police merely approach a person in public. *See id*. at 302.

Unprovoked flight in a high crime area is sufficient to create a reasonable suspicion to justify a **Terry**[3] stop under the federal constitution. **See Illinois v. Wardlow**, 528 U.S. 119, 124-25. The same is true under Article I, Section 8 of the Pennsylvania constitution. **See In re D.M.**, 781 A.2d 1161, 1163 (Pa. 2011); **Barnes**, 296 A.3d at 58 (also stating that "[w]hile additional facts may negate reasonable suspicion, **Wardlow** requires no additional facts to establish reasonable suspicion"). The pertinent factors in assessing reasonable suspicion include "nervous, evasive behavior. . . [and] [h]eadlong flight—wherever it occurs—is the consummate act of evasion. . . ." **See D.M.**, 781 A.2d at 1164 (quoting **Wardlow**, 528 U.S. at 124).

Shivers asserts that: (1) the police provoked his flight by pursuing him as he walked away, (2) even if **Wardlow** controls, this Court should reach a contrary conclusion under the Pennsylvania constitution, (3) a high crime area should not be a factor in a reasonable suspicion analysis, (4) **Wardlow** is inconsistent with other United States Supreme Court cases, (5) other courts assessing reasonable suspicion have given flight very little weight, and (6) the police lacked reasonable suspicion to seize him.

The trial court credited the evidence that Shivers engaged in unprovoked flight after seeing Officer Sidebotham in a high crime area, which

---

[3] **Terry v. Ohio**, 392 U.S. 1 (1968).

established reasonable suspicion and supported Shivers's detention. *See* Trial Court Opinion, 4/14/22, at 5-9.

Viewing the Commonwealth's evidence and the uncontradicted defense evidence in the light most favorable to the Commonwealth, the testimony established Officer Sidebotham's approach of Shivers constituted a mere encounter. *See Lyles*, 97 A.3d at 302. Shivers's unprovoked flight upon seeing Officer Sidebotham in a high crime area established reasonable suspicion to stop and frisk him under Pennsylvania law, which is coterminous with federal law. *See D.M.*, 781 A.2d at 1163; *Barnes*, 296 A.3d at 58.[4]

We are not free, as Shivers requests, to reach a contrary conclusion under the Pennsylvania law. This Court is bound to follow the *D.M.* majority's clear adoption of *Wardlow* for state constitutional purposes. *See Commonwealth v. Jefferson*, 853 A.2d 404, 407 (Pa. Super. 2004). *See also Commonwealth v. Martin*, 205 A.3d 1247, 1252 (Pa. Super. 2019) (stating that Superior Court is bound by existing precedent under the doctrine of *stare decisis* and follows controlling precedent). Shivers's contention that *Wardlow* is inconsistent with other United States Supreme Court precedent does not free this Court from its obligation to follow Pennsylvania Supreme

---

[4] The record does not support Shivers's assertion that he walked away from the officers; the trial court found that he ran away, a finding supported by the video evidence introduced at the suppression hearing. *See* N.T., 11/16/20, 9; Exhibit C-1 at 00:30-38.

Court precedent, nor does his contention that courts of other states and commentors have asserted that flight should not be given significant weight.[5]

Shivers's second issue asserts that a police officer tackling him amounted to an arrest and required the existence of probable cause.[6] Every ***Terry*** stop requires a detention during which a suspect is not free to leave but subject to the control of the detaining officer. ***See Commonwealth v. Guillespie***, 745 A.2d 654, 660 (Pa. Super. 2000). In some instances, police may handcuff a suspect during an investigative detention without that detention being converted into an arrest. ***See Commonwealth v. Carter***, 643 A.2d 61, 67 n.2 (Pa. 1994); ***Commonwealth v. Valentin***, 748 A.2d 711, 714 (Pa. Super. 2000) (holding that physically grabbing a suspect does not convert a detention into an arrest). The need to secure a suspect to permit

_____

[5] Shivers also asserts that ***Commonwealth v. Barr***, 266 A.3d 25 (Pa. 2021), establishes that a high crime area is not a factor that should be assessed in examining the legality of a stop. ***See*** Shivers's Brief at 16. In ***Barr***, the Court held that a high crime area is irrelevant where officers saw nothing suspicious ***before*** initiating a stop. ***See Barr***, 266 A.3d at 44. ***Barr*** did not purport to overturn ***D.M.*** Indeed, only two months before ***Barr***, the Supreme Court affirmed that a suspect's presence in a high crime area may be considered in assessing reasonable suspicion. ***See Interest of T.W.***, 261 A.3d 409, 424 n.5 (Pa. 2021).

[6] Shivers does not argue probable cause was lacking in this case. To the extent Shivers requests that this Court independently hold that there was a violation of state law or the state constitution, ***see*** Shivers's Brief at 38, we decline to issue such a pronouncement. ***See Commonwealth v. Fuentes***, 272 A.3d 511, 521 (Pa. Super. 2022) (stating that an intermediate appellate court is obligated to follow Supreme Court precedent and does not have the prerogative to enunciate new principles of law or expand existing legal doctrines).

an investigative detention may permit transportation of the suspect. **See Commonwealth v. Revere**, 888 A.2d 696, 707-08 (Pa. 2005).

Shivers asserts police are required to use the least intrusive means to conduct a **Terry** stop, tackling exceeds what **Terry** permitted, police were required to yell to him before tackling him, and tackling constituted an arrest.

We discern no error of law in the trial court's ruling, which implicitly sanctions the tackling of Shivers for the purposes of an investigative detention. The evidence shows that the pursuing officers first attempted to grab Shivers, **see** N.T. 11/16/20, at 13; Exhibit C-2 at 00:00-01. An officer only tackled Shivers after Shivers tore his own shirt trying to break from the grasp of an officer who sought to detain him. **See** Exhibit C-2 at 00:01-02. Shivers's active resistance compelled stronger restraint to allow the police to conduct the investigative detention the facts supported.[7] Accordingly, the tackling of Shivers did not constitute an arrest but an investigative detention.

_____

[7] Shivers cites the United States Supreme Court's statement in **Florida v. Royer**, 460 U.S. 491, 500 (1983), that "the least intrusive means reasonably available [should be employed] to verify or dispel the officer's suspicion," after a suspect's detention. **See** Shivers's Brief at 36. However, **Royer** does not address the means by which police detain a suspect but instead their conduct **after** a seizure has occurred. **See Royer**, 460 U.S. at 500. Further, on the facts of this case, where Shivers continued to flee after a uniformed officer grabbed him in an attempt to detain him, it is unclear what lesser method than tackling the police could have employed, nor is there any reason on this record to believe, as Shivers asserts, that shouting "stop" would have resulted in his compliance, where an attempt at lesser physical restraint had failed.

*See Revere*, 888 A.2d at 707-08; *Valentin*, 748 A.2d at 714; *Carter*, 643 A.2d at 67.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/07/2023