J-A21031-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ZAIRE N. LIVINGSTON | : | |
| | : | |
| Appellant | : | No. 1546 EDA 2023 |

Appeal from the Judgment of Sentence Entered May 19, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003287-2022

BEFORE: KUNSELMAN, J., NICHOLS, J., and BECK, J.

MEMORANDUM BY BECK, J.:            **FILED DECEMBER 17, 2024**

Zaire Livingston ("Livingston") appeals from the judgment of sentence entered by the Philadelphia County Court of Common Pleas ("trial court") following his guilty plea to carrying a firearm on public streets in Philadelphia and possession of a controlled substance.[1] Livingston challenges the denial of his suppression motion and raises several constitutional claims concerning the constitutionality of the statute governing the crime of carrying a firearm on public streets in Philadelphia. As there is no merit to any of Livingston's claims, we affirm.

On February 14, 2022, just before his twenty-first birthday, police arrested Livingston after they observed him selling drugs to a woman in a

---

[1] 18 Pa.C.S. § 6108; 35 P.S. § 780-113(a)(16).

dark alley. Livingston was charged with two drug-related offenses (possession of a controlled substance and possession with intent to deliver a controlled substance ("PWID")) and two violations of the Pennsylvania Uniform Firearms Act ("VUFA") (carrying a firearm without a license and carrying a firearm on public streets in Philadelphia).

Prior to trial, Livingston filed a motion to suppress the evidence of his police interaction. He maintained that police conducted an illegal search and seizure of his person, which led to the discovery of drugs in his pocket and his subsequent admission that he was carrying a firearm concealed in his waistband.

The trial court provided the following summary of its factual findings from the suppression hearing:

> On February 14, 2022, at about 6:18 p.m., [Philadelphia Police] Officers [Evan] McBride and [Juan] Nieves were on foot patrol with two other officers in the 1800 block of East Clementine Street in the Kensington neighborhood of Philadelphia. Both officers had been assigned to patrol this area of the city for many months, and were familiar with the high levels of drug activity on that block and the two-block area surrounding it. Officer McBride testified, "[i]n that area, specifically, just on routine foot patrol, I have walked into and observed a number of hand-to-hand transactions for alleged narcotics[;] ... I could not tell you how many times, just walking up and down that two block radius, I've observed hand-to-hand transactions. I have interrupted hand-to-hand transactions, and have made a number of narcotics arrests in that area." He testified that in the 1800 block of East Clementine Street[,] it was typical for individuals to conceal themselves between and behind parked cars to conduct hand-to-hand narcotics transactions. Officer Nieves testified that he patrolled in the area eight hours a day, had assisted with many narcotics arrests, and had made narcotics arrests in the immediate area of the 1800 block of Clementine.

On that February night, as Officer Nieves'[] body worn camera footage showed, the 1800 block of East Clementine Street was narrow, dark, and empty. There appeared to be no open businesses. It was a cold night. Officer McBride was shining his flashlight between cars as he walked. Officer McBride was the first to reach the spot where East Clementine Street intersected with Ruth Street, an even narrower, darker, street. As he reached the corner, he saw, "less than five feet away" from him, Livingston standing behind two parked cars with a woman. Officer Nieves'[] body worn camera showed that Livingston and the woman were in the darkest, most secluded spot of the dark, quiet corner. Officer McBride saw the woman hand Livingston an unidentified amount of United States currency, and saw Livingston take the currency with one hand and reach into his jacket pocket with the other. Officer McBride directed his flashlight at the pair and asked what they were doing. Livingston, appearing startled and "very, very flustered," pulled his empty hand out of his jacket pocket and held it up, while still holding the currency in his other hand. The left pocket of Livingston's down jacket, which was the pocket he had been reaching into when Officer McBride first saw him, was unzipped.

Officer McBride and two of the other officers, believing that they had caught Livingston in the midst of a narcotics transaction, quickly detained Livingston by turning him around and having him put his hands against the wall. Three officers placed their hands on his back and shoulders, but, as the body worn camera footage shows, they did not apply force, frisk him, or manipulate his clothing. Neither were they threatening him or shouting at him. Officer McBride testified that Livingston was not under arrest at that point.

During the next few seconds, while Livingston stood with his hands against the wall, Officer Nieves moved around him, shining his flashlight on him. In Livingston's unzipped jacket pocket, Officer Nieves saw a part of a Ziploc bag with a bundle of blue inserts. This bag was at the opening of the jacket pocket, where it would have been visible in daylight. Officer Nieves shined his flashlight on the pocket and confirmed that the bag and inserts were what he knew, based on his experience, to be narcotics packaging. Officer Nieves told Officer McBride what he saw. Officer McBride then shined his flashlight on Livingston's pocket, saw the bundle, and retrieved it.

Officer McBride put Livingston under arrest and placed him in handcuffs. Officer McBride then asked Livingston if he had any needles or anything else dangerous on his person. Livingston replied that he had a handgun in his waistband, and Officer McBride recovered a "Ruger LC9S, pink wooden pattern firearm" from his waistband.

Trial Court Opinion, 9/25/2023, at 1-4 (record citations omitted; some capitalization altered; name substituted for party designation).

The trial court denied Livingston's suppression motion, concluding that prior to finding drugs on his person, police "had reasonable suspicion to conduct an investigatory detention of Livingston; the investigatory detention did not rise to the level of a custodial detention; the officers did not frisk Livingston or physically manipulate his jacket; and the drugs in Livingston's pocket were in plain view." *Id.* at 4. Livingston filed a motion for reconsideration, which the trial court denied.

Livingston then filed a motion to dismiss the VUFA charges. Relying on *New York State Rifle & Pistol Association., Inc. v. Bruen*, 597 U.S. 1 (2022), Livingston argued:

Pennsylvania's statutory firearms licensing scheme is unconstitutional under the Second and Fourteenth Amendments to the United States Constitution and Article I, § 21 of the Pennsylvania Constitution. Specifically, Livingston contended, the Pennsylvania statute setting forth the criteria for a license to carry, 18 Pa.C.S. § 6109, is unconstitutional because it restricts licenses to people over the age of 21. … Accordingly, Livingston argued, any Pennsylvania statute that prohibits the carrying of a firearm without a license, including 18 Pa.C.S. § 6108, may not be applied to people[, like Livingston,] who were [eighteen, nineteen, or twenty] years old at the time of their arrest. Livingston also argued that Pennsylvania's statutory licensing

- 4 -

scheme violated the equal protection rights of [eighteen- to twenty-year-old individuals] under the United States and Pennsylvania Constitutions and that 18 Pa.C.S. § 6108 violated Pennsylvania's Constitutional prohibition against special or local laws [set forth in Article III, § 32].

Trial Court Opinion, 9/25/2023, at 4-5 (some capitalization and citations altered; name substituted for party designation).

In its response, the Commonwealth asserted that the trial court should avoid addressing his constitutional arguments because, at the time of his arrest, Livingston had pending felony drug charges that made him ineligible for a license to carry firearms independent of his age. **See** Commonwealth's Response to Defendant's Motion to Dismiss, 12/1/2023, at 3[2] (citing 18 Pa.C.S. § 6109(e)(1)(viii) ("A license shall not be issued to … [a]n individual who is charged with or has been convicted of a crime punishable by imprisonment for a term exceeding one year except as provided for in section 6123 (relating to waiver of disability or pardons).")). According to the secure court summary, which the Commonwealth attached to its response, Livingston was arrested on several occasions in 2020 and charged with multiple counts

---

[2] Neither this document nor Livingston's response thereto appeared in the certified record on appeal originally sent to this Court. According to the parties, they emailed the documents to the trial court judge, but did not file them with the clerk of courts. At oral argument, the panel instructed the parties to supplement the record with these documents pursuant to Pennsylvania Rule of Appellate Procedure 1926. Instead, the parties submitted the documents to this Court as a post-submission communication pursuant to Pennsylvania Rule of Appellate Procedure 2501. Neither party has objected to our consideration of these documents in this case.

of PWID, several of which remained pending at the time of his arrest in the current case. *Id.*, Exhibit B (secure court summary). Alternatively, the Commonwealth set forth arguments responding to the merits of Livingston's various constitutional challenges. Livingston submitted a reply, contending that his ineligibility on any other grounds was not relevant to the issue of whether the statutes are facially unconstitutional and unenforceable because the age-based licensing prohibition applied to all eighteen- to twenty-year-old individuals in all circumstances. *See* Reply to Commonwealth Response to Motion to Dismiss, 12/1/2023 at 5 n.2. On April 27, 2023, the trial court denied Livingston's motion to dismiss.

On May 19, 2023, Livingston entered a negotiated guilty plea to carrying a firearm on public streets in Philadelphia and possession of a controlled substance in exchange for a sentence of eleven to twenty-two months of incarceration followed by thirty months of probation for the section 6108 violation and no further penalties on the narcotics offense. As part of the negotiated plea agreement, the Commonwealth nolle prossed the remaining charges and Livingston reserved the right to file a direct appeal on the merits of his legal issues. The same day, the trial court sentenced Livingston in accordance with the parties' agreement.

Livingston timely filed a notice of appeal. Livingston and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925. He raises the following issues on appeal:

1. Did the police act unreasonably and violate the Fourth Amendment and independently Article I, Section 8 with intrusions on [Livingston]'s person that unreasonably exceed what is permissible during a *Terry* stop?

2. Is 18 Pa.C.S. § 6108 unconstitutional on its face and as applied to [eighteen- to twenty-year old individuals] under the [U]nited States Constitution, and independently the Pennsylvania Constitution for four separate reasons?

   The question presented more specifically is whether:

   a. Section 6108 violates the Second Amendment right to public carry.

   b. Section 6108 violates Article I, § 21 of the Pennsylvania Constitution[, which] provides that the right to bear arms "shall not be questioned", and Article I, § 1, which] provides a right of self-defense.

   c. Section 6108 violates the equal protection rights of people in Philadelphia, and most severely those who are [eighteen to twenty] years old.

   d. Section 6108, realistically applying only to Philadelphia, is special local legislation, a per se violation of Article III, § 32 of the Pennsylvania Constitution.

Livingston's Brief at 2.

### Suppression

Livingston argues that the trial court erred by denying his motion to suppress the drugs found in his pocket and the firearm in his waistband recovered after his disclosure of its presence. Livingston's Brief at 11-16. Livingston concedes that police had reasonable suspicion to believe that he was in the process of selling drugs, thereby justifying an investigative stop under *Terry v. Ohio*, 392 U.S. 1 (1968). Livingston's Brief at 11. Nevertheless, Livingston insists that police violated the Fourth Amendment to

- 7 -

the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution by subjecting him to a custodial detention. *Id.* at 11-13.

Livingston emphasizes that despite his cooperation with police, three police officers immediately grabbed him and held him against the wall with their hands on his back and shoulders, while a fourth officer intrusively shined his flashlight into Livingston's jacket pocket. *Id.* at 11. Livingston insists that by holding him against the wall at the time police discovered the drugs in his pocket, they had subjected him to a custodial detention without the requisite probable cause. *Id.* A reasonable person, Livingston argues, would have believed that the officers significantly deprived him of his freedom of movement, indicated their intent to take him into custody, and subjected him to their actual control and will. *Id.* at 11-12.

Alternatively, Livingston contends that police lacked justification for a *Terry* frisk because they had no reason to believe that he was armed and dangerous. *Id.* at 13. Even if the officers did have justification for a *Terry* frisk, Livingston maintains that the officers were entitled only to pat down the outer portion of his clothing to dispel the fear that he was carrying a weapon, but they could not "place their hands all over" him to hold him up against the wall and to peer into his pockets with a flashlight. *Id.* at 13-16.

When reviewing a trial court's denial of a suppression motion, we bear in mind "that the trial court's findings of fact are binding upon us to the extent they have record support, but we conduct a de novo review of its legal

conclusions." ***Commonwealth v. Adams***, 205 A.3d 1195, 1199 (Pa. 2019).

"Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." ***Commonwealth v. Smith***, 164 A.3d 1255, 1257 (Pa. Super. 2017).

Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution protect individuals from unreasonable searches and seizures. Interactions between citizens and police fall into three separate categories:

> The first, a "mere encounter," does not require any level of suspicion or carry any official compulsion to stop or respond. The second, an "investigative detention," permits the temporary detention of an individual if supported by reasonable suspicion. The third is an arrest or custodial detention, which must be supported by probable cause.

***Commonwealth v. Lyles***, 97 A.3d 298, 302 (Pa. 2014) (citations omitted).

At issue here is whether police subjected Livingston to an investigative detention or a custodial detention. "[A]n investigative detention[] is a temporary detention of a citizen[]" and "constitutes a seizure of a person[.]" ***Adams***, 205 A.3d at 1199-1200. A "custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest." ***Commonwealth v. Mackey***, 177 A.3d 221, 227 (Pa. Super. 2017). An arrest is "any act that indicates an intention to take the person into custody and

- 9 -

subjects him to the actual control and will of the person making the arrest."

***Commonwealth v. Lovette***, 450 A.2d 975, 978 (Pa. 1982).

"When initially evaluating the level of interaction between law enforcement and a citizen to determine if a seizure occurred, courts conduct an objective examination of the totality of the surrounding circumstances." ***Commonwealth v. Luczki***, 212 A.3d 530, 543 (Pa. Super. 2019) (citation and quotation marks omitted). To decide "whether a particular detention is investigatory or custodial in nature," courts consider a non-exhaustive list of factors:

> the basis for the detention (the crime suspected and the grounds for suspicion); the duration of the detention; the location of the detention (public or private); whether the suspect was transported against his will (how far, why); the method of detention; the show, threat or use of force; and[] the investigative methods used to confirm or dispel suspicions.

***Commonwealth v. Valentin***, 748 A.2d 711, 714 (Pa. Super. 2000). Courts must assess "the reasonable impression conveyed to the person subjected to the seizure rather than … the subjective views of the police officer making the arrest." ***Commonwealth v. Carter***, 643 A.2d 61, 67 (Pa. 1994).

If an officer observes contraband in his plain view from a lawful vantage point during an investigative detention that is supported by reasonable suspicion, the officer may lawfully seize such contraband. ***See Harris v. U.S.***, 390 U.S. 234, 236 (1968) ("It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence."); ***see also***

*Commonwealth v. McCree*, 924 A.2d 621, 628 (Pa. 2007) (explaining that the plain view doctrine justifies the seizure of an item that is within the officers' plain view, but cannot provide the justification as to why the officer was in the vantage point to observe the item in the first place). The plain view doctrine includes objects in the dark that the officer only could see once illuminated by flashlight. *Commonwealth v. Burton*, 436 A.2d 1010, 1013 (Pa. Super. 1981).

It is uncontested that, by turning Livingston around, having him put his hands against the wall, and placing their hands on Livingston's back, there is no question that the officers detained Livingston. Based upon the body camera footage, the trial court determined that the nature of the detention was investigative and not custodial. Trial Court Opinion, 9/25/2023, at 9-10. In addition to the brief duration of the encounter, the court found it significant that the officers did not apply force, threaten him, shout at him, or transport Livingston to a different location. *Id.*

We have reviewed the body camera footage and agree with the trial court's conclusion. Several officers held Livingston's hands on the wall and had their hands on his hands and back, signaling to Livingston that he was not free to leave while police investigated their suspicion that he had been selling drugs to a person on the street. The encounter, however, was very brief and did not become so coercive or forceful that it transformed into a custodial detention. N.T., 12/2/2022, Exhibits C-1, C-2. Although it is an

- 11 -

important factor, physical contact or restraint during a detention does not automatically shift the nature of the detention from investigative to custodial, particularly where, as here, the detention is short and police do not interrogate the suspect, transport him against his will, or display weapons. **See Commonwealth v. Carter**, 643 A.2d 61, 68 n.2 (Pa. 1994) ("We, of course, do not hold that every time the police place an individual in handcuffs that individual has been arrested."); **Commonwealth v. Guillespie**, 745 A.2d 654, 660–61 (Pa. Super. 2000) ("While the use of restraints is a factor to be considered with regard to whether a detention is custodial, in the present case other factors militate against such a finding—e.g., minimal duration of detention, no transport against will, no show or threat or use of force."); **Valentin**, 748 A.2d at 714 (holding that police detained a suspected drug dealer for investigative purposes, not custodial, when police directed him to place his hands on a car and held his clothes because the officers did not interrogate him, display their weapons, threaten him, or transport him against his will).

As for Livingston's argument that the officers subjected him to a frisk and only brought the baggie of drugs in his pocket into plain view by physically manipulating his pocket, the trial court determined that the body worn camera and credible police testimony demonstrated otherwise. **See** Trial Court Opinion, 9/25/2023, at 9-10. The trial court emphasized that the officers did not feel or manipulate Livingston's jacket, open the pocket, or otherwise cause

- 12 -

the pocket to be open. *Id.* Instead, Livingston's pocket was unzipped when police initially interrupted the suspected drug transaction and remained open throughout the investigative detention, during which Officer Nieves was able to observe the narcotics from a lawful vantage point and seize the narcotics pursuant to the plain view doctrine. *Id*.

Upon review of the testimony and video footage, we agree with the trial court's assessment. Officer Nieves testified that he observed an object in the darkness in Livingston's pocket during the brief detention. N.T., 12/20/2022, at 76-78. The object resembled a bundle of heroin and he shined his flashlight upon the open pocket to confirm his suspicion. *Id.* at 77-78. With the aid of the flashlight, he observed "clear as day" that the object was a clear Ziploc bag with blue inserts that are commonly used to package heroin. *Id.* at 76. At the point that Officer Nieves made this discovery, police were investigating their suspicion that Livingston had been selling illegal drugs.

Because Livingston was subject to a lawful investigative detention at the time that Officer Nieves observed the heroin bundle in Livingston's open pocket, Officer Nieves lawfully seized the heroin and had probable cause to arrest Livingston. *Cf. Commonwealth v. Graham*, 721 A.2d 1075, 1080 (Pa. 1998) (plurality) (concluding that because the officer had completed the investigative detention and determined that the individual was not carrying weapons before the officer shined his light into the individual's back pocket, the plain view doctrine neither could validate the search of the pocket nor the

seizure of the contraband). Police then were entitled to conduct a search incident to arrest, which led to Livingston's admission that he had a firearm in his waistband. *See Commonwealth v. Hannon*, 837 A.2d 551, 555 (Pa. Super. 2003) ("Since probable cause existed to arrest appellant, and appellant's person was searched incident to a legal arrest, the evidence obtained from a search of appellant's pockets was properly admitted."). Accordingly, the trial court did not err in denying Livingston's motion to suppress the drugs and firearm.

### Constitutionality of Section 6108

Section 6108 of the Uniform Firearms Act states that "[n]o person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless … (1) such person is licensed to carry a firearm[.]"[3] 18 Pa.C.S. § 6108. Livingston raises several constitutional challenges to this provision.

A challenge to the constitutionality of a statute "is a question of law for which our standard of review is de novo and our scope of review is plenary." *Commonwealth v. McIntyre*, 314 A.3d 828, 839 (Pa. Super. 2024). Our review of the constitutionality of a statute is guided by the following:

> A statute is presumed to be constitutional and will only be invalidated as unconstitutional if it clearly, palpably, and plainly violates constitutional rights.

---

[3] Philadelphia is the only Pennsylvania city of the first class.

- 14 -

A defendant may contest the constitutionality of a statute on its face or as[]applied. A facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case. An as-applied attack, in contrast, does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right. A criminal defendant may seek to vacate his conviction by demonstrating a law's facial or as-applied unconstitutionality.

*Commonwealth v. Papp*, 305 A.3d 62, 70 (Pa. Super. 2023) (citation, brackets, and quotation marks omitted).

### Second Amendment to the United States Constitution and Article I, Section 21 of the Pennsylvania Constitution

Livingston's first constitutional challenge to section 6108 is based on the Second Amendment to the United States Constitution and the United States Supreme Court's recent decision in *Bruen*.[4] The Second Amendment, made applicable to the states through the Fourteenth Amendment, declares that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. This "right secures for Americans a means of self-defense." *U.S. v. Rahimi*, 602 U.S. ---, 144 S. Ct. 1889, 1897 (2024).

In *Bruen*, the United States Supreme Court held that "the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *Bruen*, 597 U.S. at 10. Like most rights,

---

[4] Because of the manner by which we address and dispose of his arguments related to these separate constitutional provisions, we address them together.

the Court observed, this right is not unlimited. *Id.* at 22. Thus, when an individual challenges the constitutionality of a governmental regulation that infringes upon the right to carry a firearm in public, *Bruen* requires a two-step analysis. *Id.* at 17. First, we must determine whether "the Second Amendment's plain text covers an individual's conduct." *Id.* If so, "the Constitution presumptively protects that conduct," and the "government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.*; *accord Barris v. Stroud Township*, 310 A.3d 175, 188 (Pa. 2024)

Livingston argues that section 6108 is unconstitutional as applied to individuals between the ages of eighteen and twenty,[5] like himself at the time of his arrest in this case, because section 6109(b), which describes the logistics of and criteria for obtaining a license to carry a firearm, does not provide a mechanism for such individuals to apply for and obtain a license to carry a firearm.[6] Livingston's Brief at 17. Section 6109(b) states that "[a]n individual who is [twenty-one] years of age or older may apply to a sheriff for

_____

[5] In general, in Pennsylvania, it is a crime for those under the age of eighteen to possess a firearm. *See* 18 Pa.C.S. § 6110.1(a) ("Except as provided in subsection (b), a person under 18 years of age shall not possess or transport a firearm anywhere in this Commonwealth.").

[6] In his appellate brief, Livingston argues that section 6108 is unconstitutional both facially and as-applied to eighteen- to twenty-year-old individuals. *See* Livingston's Brief at 41. At oral argument, counsel for Livingston clarified that he was solely challenging the constitutionality of section 6108 only on the basis that it is unconstitutional as applied to eighteen to twenty year olds.

a license to carry a firearm concealed on or about his person or in a vehicle within this Commonwealth." 18 Pa.C.S. § 6109(b). Livingston argues that together, sections 6108 and 6109(b) render it impossible for eighteen- to twenty-year-olds to carry a firearm publicly in Philadelphia without facing criminal penalties, which impermissibly infringes upon the constitutional right to carry a firearm. *See* Livingston's Brief at 17.

Because the right to carry a firearm in public squarely falls under the Second Amendment's textual command per ***Bruen***, Livingston focuses on the second part of the two-part test. According to Livingston, the Commonwealth cannot establish that restricting eighteen- to twenty-year-old individuals from carrying a firearm publicly falls within the historical tradition of firearm regulation because, at the time of the adoption of the Second Amendment, states required men between the ages of eighteen and forty-five to join the militia and equip themselves with appropriate weaponry, including firearms. Livington contends this demonstrates that historically, eighteen- to twenty-year-olds were entitled to carry a firearm publicly. *See* Livingston's Brief at 25-27. Though recognizing the state's interest in public safety in large urban areas, Livingston argues that eighteen- to twenty-year-old individuals have the constitutional right to bear arms in self-defense in those areas for precisely that reason. ***Id.*** at 28.

Livingston's second constitutional challenge to section 6108 is based on Article I, Section 21 of the Pennsylvania Constitution. *See* Livingston's Brief

at 29-35. Article I, Section 21 states, "[t]he right of the citizens to bear arms in defence of themselves and the State shall not be questioned." PA. CONST. art. 1, § 21. Livingston makes the same age-based as-applied challenge to the constitutionality of section 6108 under the Pennsylvania Constitution as he did under the federal charter. *See* Livingston's Brief at 29-35. He additionally argues that the Pennsylvania Constitution provides greater protection of the right to bear arms than the United States Constitution. *See id.* at 30. Specifically, Livingston contends that because Article I, Section 21 states that the right to bear arms "shall not be questioned," the right is one that eighteen- to twenty-year-old individuals "enjoy equally with everyone else in Pennsylvania, and that there is no basis for diminishing this fundamental right for people living in urban areas like Philadelphia." *Id.* at 32. He further asserts, "[j]ust as there is no national historical justification for limiting the right to bear arms for [eighteen- to twenty-year-olds,] there is no basis for limiting Article I, Section 21 rights for those young adults in Pennsylvania." *Id.*

The trial court determined that Livingston lacked standing to challenge the constitutionality of section 6108 through the age restriction of section 6109(b) because he is not "affected by the particular feature alleged to be in conflict with the constitution." Trial Court Opinion, 9/25/2023, at 12 (citing *Commonwealth v. Dodge*, 429 A.2d 1143, 1146 (Pa. Super. 1981)). In support of its determination, the trial court relied on section 6109(e)(1)(viii),

which, in pertinent part, prohibits issuing a license to carry to any "individual who is charged with … a crime punishable by imprisonment for a term exceeding one year[.]" *Id.* (citing 18 Pa.C.S. § 6109(e)(1)(viii)). Because Livingston had unrelated felony charges of PWID pending at the time of his arrest in this case, the trial court concluded that Livingston would have been ineligible for a license to carry firearms under section 6109(e)(1)(viii), regardless of his age. *Id.*

Livingston argues that the trial court erred in determining that he lacked standing to challenge the constitutionality of section 6108 based upon its age restrictions. Livingston's Brief at 17-23. Specifically, Livingston asserts that the trial court failed to recognize that he was unable to even apply for a license to carry because he was under the age of twenty-one at the time of his arrest. *Id.* at 20. He contends that the trial court wrongly concluded that it could not decide his constitutional challenge on the "hypothetical" basis that he would have been denied a license because he had multiple charges of PWID pending at the time of his arrest in this case. *Id.* at 20-21. Additionally, Livingston asserts that it is was "very unlikely" that the General Assembly intended for section 6109(e)(1)(viii) to apply "to a mere arrest on a felony charge." *Id.* at 21-22.

At the outset, we disagree with the trial court's framing of the issue as one of standing.

> The doctrine of standing stems from the principle that judicial
> intervention is appropriate only where the underlying controversy

is real and concrete, rather than abstract. The touchstone of standing is protecting against improper plaintiffs. To do so, courts require a plaintiff to demonstrate he or she has been aggrieved by the conduct he or she challenges. To determine whether the plaintiff has been aggrieved, Pennsylvania courts traditionally examine whether the plaintiff's interest in the outcome of the lawsuit is substantial, direct, and immediate. A party's interest is substantial when it surpasses the interest of all citizens in procuring obedience to the law; it is direct when the asserted violation shares a causal connection with the alleged harm; finally, a party's interest is immediate when the causal connection with the alleged harm is neither remote nor speculative.

**Commonwealth v. Sanchez**, ___ A.3d ___, 2024 WL 4576662 at *3 (Pa. Super. 2024) (citation and brackets omitted).

There can be no question in this case that Livingston is an "aggrieved party" and that his interest in the outcome of his constitutional challenge is "substantial, direct, and immediate." **See id.** Livingston pled guilty to a crime under section 6108 and his claim on appeal is that the statutory provision to which he pled guilty is unconstitutional. Were we to determine that section 6108 is indeed unconstitutional, we would vacate his judgment of sentence. Thus, Livingston had standing to raise his constitutional challenge to section 6108.

Nonetheless, we agree with the trial court's decision not to reach the substance of Livingston's claim that section 6108 is unconstitutional as applied to eighteen- to twenty-year-old individuals. **See Commonwealth v. Katona**, 191 A.3d 8, 16 (Pa. Super. 2018) (en banc) (explaining that we may affirm if there is any basis on the record to support the trial court's decision,

even if we rely on a different basis). Instead, we find more appropriate the application of the doctrine of constitutional avoidance.

Under the doctrine of constitutional avoidance, "[w]e will not attempt to resolve constitutional issues unless the specific issue is before us and the resolution of the issue is absolutely necessary to the decision of the case." *Commonwealth v. Homoki*, 621 A.2d 136, 140 (Pa. Super. 1993); *see also Commonwealth v. Dunkins*, 263 A.3d 247, 253 n.5 (Pa. 2021) (explaining "the sound tenet of jurisprudence that courts should avoid constitutional issues when the issue at hand may be decided upon other grounds"); *In re Stevenson*, 12 A.3d 273, 275 (Pa. 2010) (per curiam) ("[A]s a general matter, it is better to avoid constitutional questions if a non-constitutional ground for decision is available."); *Commonwealth v. Collins*, 286 A.3d 767, 773 (Pa. Super. 2022) (observing that courts often employ "the doctrine of constitutional avoidance" as "we ought not to pass on questions of constitutionality ... unless such adjudication is unavoidable").

The record reflects that at the time of his arrest in this case, Livingston had a pending felony charge of PWID. *See* Commonwealth's Response to Defendant's Motion to Dismiss, 12/1/2023, at 3, Exhibit B (secure court summary). This charge was punishable by imprisonment for a term exceeding one year. *See* 35 P.S. § 780-113(a)(30), (f). Contrary to Livingston's assertion, the conclusion that he was ineligible to obtain a firearms license in Philadelphia at the time of his arrest in this case is not hypothetical. To the

- 21 -

contrary, section 6109(e)(1)(viii) expressly states that a license to carry a firearm "**shall not** be issued" to "[a]n individual who is **charged with** or has been convicted of a crime punishable by imprisonment for a term exceeding one year[.]" 18 Pa.C.S. § 6109(e)(1)(viii) (emphasis added). Thus, there is no question that Livingston was ineligible to obtain a license to a carry a firearm in Philadelphia at the time of his arrest in this case, independent of his age. *See id.*

Moreover, we are unpersuaded by Livingston's argument that the General Assembly did not intend for section 6109(e)(1)(viii) to apply to individuals who were merely charged with, and not convicted of, a crime punishable by imprisonment for a term exceeding one year. The clear, plain, and unambiguous language of the provision says otherwise. *See Commonwealth v. Lehman*, 311 A.3d 1034, 1044 (Pa. 2024) (recognizing that when interpreting a statute, "the plain language of the statute" is the best indicator of what the General Assembly intended when drafting the statute; "[i]f the statutory language is clear and unambiguous in setting forth the intent of the General Assembly, then we cannot disregard the letter of the statute under the pretext of pursuing its spirit") (quotation mark and citation omitted).

Section 6109(e)(1)(viii) states an individual "**shall not**" receive a license to carry a firearm if they have been "**charged with** … a crime punishable by imprisonment for a term exceeding one year[.]" 18 Pa.C.S.

§ 6109(e)(1)(viii) (emphasis added). This can only be interpreted to mean that a person charged with a crime punishable by imprisonment for a term exceeding one year simply cannot obtain a license to carry a firearm.[7] *See id.*; *Lehman*, 311 A.3d at 1044.

Based on the foregoing, regardless of section 6109(b)'s age restriction, Livingston was ineligible to obtain a license to carry a firearm at the time of his arrest in this case, and he therefore could not lawfully carry a firearm on the public streets of Philadelphia. Consequently, even if we were to conclude that section 6108 was unconstitutional as applied to eighteen- to twenty-year-old individuals, we would still be required to uphold his conviction under section 6108 on appeal. We therefore conclude that it would be inappropriate to address the substance of Livingston's age-based constitutional challenges to section 6108 pursuant to the doctrine of constitutional avoidance. *See Collins*, 286 A.3d at 773. Accordingly, Livingston's constitutional claims under both the Second Amendment to the United States Constitution and Article I, Section 21 of the Pennsylvania Constitution fail.

*Equal Protection*

---

[7] We note that to the extent he challenges the constitutionality of section 6109(e)(1)(viii), Livingston failed to preserve such a challenge in his Rule 1925(b) statement. *See* Rule 1925(b) Statement, 7/10/2023; *see also* Pa.R.A.P. 1925(b)(4)(vii) (stating that issues not included in the Rule 1925(b) statement are waived); *Commonwealth v. Lawrence*, 99 A.3d 116, 122 (Pa. Super. 2014) (noting that claims regarding "[t]he constitutionality of a statute can be waived").

For his third constitutional claim, Livingston argues that section 6108 violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution[8] and Article I, Sections 1[9] and 26[10] of the Pennsylvania Constitution. *See* Livingston's Brief at 35-41. Livingston asserts that because section 6108 restricts the fundamental right to bear arms, it must be justified by a compelling government interest and survive strict scrutiny. *Id.* at 38. Livingston contends that section 6108, which he maintains the Generally Assembly enacted to promote public safety, is not a legitimate public interest sufficient to restrict this constitutional right in urban areas like Philadelphia, "where the need to bear arms for self-defense against criminals is greatest." *Id.* at 39. Thus, Livingston asserts that the General Assembly "in [s]ection 6108 did not have the authority to diminish the

---

[8] "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

[9] "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." PA. CONST. art. I, § 1.

[10] "Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right." PA. CONST. art. I, § 26.

constitutional rights of those living in Philadelphia because it viewed the city as a high crime area." ***Id.*** at 40.[11]

"The essence of the constitutional principle of equal protection under the law is that like persons in like circumstances will be treated similarly." ***Commonwealth v. Alston***, 233 A.3d 795, 805 (Pa. Super. 2020) (quotation marks and citation omitted). "However, it does not require that all persons under all circumstances enjoy identical protection under the law." ***Commonwealth v. Jacquez***, 113 A.3d 834, 838 (Pa. Super. 2015).

We analyze constitutional challenges based on equal protection under the following framework:

> Equal protection analysis recognizes three types of governmental classification, each of which calls for a different standard of scrutiny. The appropriate standard ... is determined

---

[11] We note that Livingston does not frame his equal protection challenge to section 6108 within the context of ***Bruen***. ***See*** Livingston's Brief at 35-41. In fact, it is not until his reply brief that Livingston even mentions ***Bruen*** in relation to his equal protection challenge, and even there, he does so in passing. ***See*** Livingston's Reply Brief at 19-20; ***see also infra***, note 12. This is insufficient to raise the claim that the ***Bruen*** analysis applies in the equal protection context to the extent the equal protection claim raised relates to gun ownership or rights. ***See Commonwealth v. Fahy***, 737 A.2d 214, 218 n.8 (Pa. 1999) ("[A]n appellant is prohibited from raising new issues in a reply brief. Moreover, a reply brief cannot be a vehicle to argue issues raised but inadequately developed in appellant's original brief."); ***see also Commonwealth v. Otero***, 860 A.2d 1052, 1054 (Pa. Super. 2004) ("Issues presented before this court for the first time in a reply brief are waived."). Rather, throughout his principal brief, Livingston presents his equal protection challenge to section 6108 as separate and distinct from his challenges to section 6108 under the Second Amendment to the United States Constitution, Article I, Section 21 of the Pennsylvania Constitution, and ***Bruen***. ***See*** Livingston's Brief at 35-41. We therefore do not address whether, and to what extent, ***Bruen*** could apply in the context of an equal protection challenge.

by examining the nature of the classification and the rights thereby affected. In the first type of case, where the classification relates to who may exercise a fundamental right or is based on a suspect trait such as race or national origin, strict scrutiny is required. When strict scrutiny is employed, a classification will be invalid unless it is found to be necessary to the achievement of a compelling state interest.

The second type of case involves a classification which, although not suspect, is either sensitive or important but not fundamental. Such a classification must serve an important governmental interest and be substantially related to the achievement of that objective.

The third type of situation involves classifications which are neither suspect nor sensitive or rights which are neither fundamental nor important. Such classifications will be valid as long as they are rationally related to a legitimate governmental interest.

*Commonwealth v. Smith*, 320 A.3d 674, 686 (Pa. Super. 2024) (citation omitted).

With respect to Livingston's constitutional challenge to section 6108 on equal protection grounds, we find *Commonwealth v. Scarborough*, 89 A.3d 679 (Pa. Super. 2014), to be instructive. As in the case at bar, *Scarborough* involved a constitutional challenge to section 6108 on the basis that it violated the right of equal protection under both the United States and Pennsylvania Constitutions. *Id.* at 682, 684-85. In rejecting the constitutional challenge to section 6108, we explained that "[t]he class created by [s]ection 6108, 'persons located in Philadelphia,' … and the right at issue under [s]ection 6108, 'the right to carry a firearm on the streets of Philadelphia without a license,'

[is] not [a] fundamental right[].” *Id.* at 686. Thus, we determined that “the nature of our review as to” section 6108 “must be rational basis.” *Id.*

Analyzing section 6108 under a rational basis review, this Court concluded that the provision served a legitimate state interest—namely, combating gun violence in Philadelphia, as it “is staggeringly disproportionate to any other area of Pennsylvania.” *Id.* We reasoned,

> [s]ection 6108 rationally addresses gun violence in Philadelphia. Throughout the Commonwealth of Pennsylvania, a license is necessary only if carrying a concealed firearm; openly carried firearms do not require a license. However, in Philadelphia a firearm carried openly requires a license. Clearly the purpose of the Legislature in enacting this prohibition is twofold. First, as the most populated city in the Commonwealth with a correspondingly high crime rate, the possession of a weapon on a city street, particularly the brandishing of a weapon, can invoke a fearful reaction on behalf of the citizenry and the possibility of a dangerous response by law enforcement officers. Second, a coordinate purpose is to aid in the efforts of law enforcement in the protection of the public; in Philadelphia, the police are empowered to arrest an individual for overtly carrying a firearm without first determining if it is licensed or operable. We find that [s]ection 6108 serves a legitimate state interest.

*Id.* 686-87 (citations omitted). We therefore concluded that section 6108 did not offend equal protection rights. *Id.* at 687.

We are bound by our prior decision. *See Commonwealth v. Harris*, 269 A.3d 534, 539 (Pa. Super. 2022) (explaining “[a]s we often recognize, a prior published opinion issued by a panel of this Court constitutes binding

precedential authority").[12] We therefore must reach the same conclusion in this case, and conclude that section 6108 does not violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution or Article I, Sections 1 and 26 of the Pennsylvania Constitution. Accordingly, Livingston's third constitutional challenge to section 6108 fails.

*The Pennsylvania Constitution's Prohibition Against Local or Special Laws*

For his final constitutional challenge, Livingston argues that section 6108 violates the prohibition contained in Article III, Section 32 of the Pennsylvania Constitution against the enactment of local or special laws. Livingston's Brief at 41-44. Livingston asserts that section 6108 is unconstitutional because the General Assembly intended for it to apply only to Philadelphia, given that the name of the provision is "[c]arrying firearms on public streets or public property in Philadelphia[,]" and because as the

_____

[12] Livingston does not cite, let alone distinguish, **Scarborough** in his principal brief. In his reply brief, Livingston makes a mere passing reference to the case, stating, in response to the Commonwealth's reliance on **Scarborough** in its brief:

> Respectfully, providing lesser rights to bear arms for those living in violence prone areas (where citizens have the greatest need to bear arms) is clearly not a legitimate state interest in light of the United States Supreme Court precedent. Whether or not **Scarborough** was a viable constitutional ruling when it was decided is not the issue; it clearly is not in light of **Bruen**.

Livingston's Reply Brief at 19-20 (citation omitted). This does not provide us with a basis to overturn our prior precedent. **See Fahy**, 737 A.2d at 218 n.8; **Harris**, 269 A.3d at 539.

Commonwealth's only city of the first class, section 6108 does, in application,

only apply to Philadelphia. *Id.* at 42-44.[13]

Article III, Section 32 of the Pennsylvania Constitution provides, in

pertinent part, as follows:

> The General Assembly shall pass no local or special law in any case which has been or can be provided for by general law and specifically the General Assembly shall not pass any local or special law:
>
>> 1. Regulating the affairs of counties, cities, townships, wards, boroughs or school districts…

PA. CONST. art. III, § 32. Of additional relevance, Article III, Section 20 of the

Pennsylvania Constitution provides:

> The Legislature shall have power to classify counties, cities, boroughs, school districts, and townships according to population, and all laws passed relating to each class, and all laws passed relating to, and regulating procedure and proceedings in court with reference to, any class, shall be deemed general legislation within the meaning of this Constitution.

PA. CONST. art. III, § 20.

_____

[13] Livingston frames this issue as violative of Article III, Section 32 because section 6108 constitutes a law "[r]egulating the affairs of counties, cities, townships, wards, boroughs or school districts." *See* Livingston's Brief at 41-42 (quoting PA. CONST. art. III, § 32). Livingston, however, fails to recognize or discuss Article IX, Section 13 of the Pennsylvania Constitution, which states that "[l]ocal and special laws, regulating the affairs of the City of Philadelphia and creating offices or prescribing the powers and duties of officers of the City of Philadelphia, shall be valid notwithstanding the provisions of section thirty-two of Article III of this Constitution." PA. CONST. art. IX, § 13(b). On this basis alone, his argument for this issue is arguably meritless.

Our Supreme Court has explained the difference between local or special

laws and general laws:

> In general, a special law is the opposite of a general law. A special law is not uniform throughout the state or applied to a class. A general law is. It is well known that the Legislature has classified cities and counties. A law dealing with all cities or all counties of the same class is not a special law, but a general law, uniform in its application. But a law dealing with but one county of a class consisting of ten, would be local or special.

**Appeal of Torbik**, 696 A.2d 1141, 1146 (Pa. 1997). Further, this Court has

explained that Article III, Section 20 "expressly authorizes the legislature to

classify political subdivisions" and to pass legislation specific to each class of

city or county as general legislation, not special or local laws. **Kistler v.**

**Carbon Cnty.**, 35 A.2d 733, 737 (Pa. Super. 1944).[14]

Section 6108 prohibits individuals "in a city of the first class" from

carrying a firearm in public unless they are licensed to do so or exempt from

licensing requirements. 18 Pa.C.S. § 6108. There is no dispute that

Philadelphia is a city of the first class. **See id.**; **see also** 53 P.S. § 101 (stating

that cities "containing a population of one million or over shall constitute the

first class"). Notwithstanding the title of section 6108, the language of section

6108 expressly states that it is applicable to any "city of the first class[.]"

Thus, section 6108 applies to a population-based class of cities and to all cities

---

[14] **Kistler** refers to "Art. III, § 34." **Kistler**, 35 A.2d at 737. At that time, the language of Article III, Section 34 contained the exact language that is now in Article III, Section 20.

of that class, which is expressly permitted under Article III, Section 20; it does not apply to a single of a class of several, which would be prohibited under Article III, section 32. *See* PA. CONST. art. III, §§ 20, 32; 18 Pa.C.S. § 6108; *see also Torbik*, 696 A.2d at 1146. Although Philadelphia is currently the only city of the first class in Pennsylvania, the possibility of another city in Pennsylvania becoming a city of the first class still exists, and there is nothing in the language of section 6108 preventing it from applying to such a city if that occurs. *See* 18 Pa.C.S. § 6108.

In support of his claim, Livingston relies on *West Mifflin Area School District v. Zahorchak*, 4 A.3d 1042 (Pa. 2010), and *Harrisburg School District v. Hickok*, 761 A.2d 1132 (Pa. 2000). Both cases involve laws that are distinguishable from section 6108. In *Zahorchak*, the statutory provisions at issue, sections 1607.1 and 1113(b.2) to the School Code,[15] required the reassignment of students from distressed and shuttered school districts stemming from low test scores to neighboring school districts and preferential hiring of the furloughed teachers from the shuttered school districts by neighboring school districts. *Zahorchak*, 4 A.3d at 1044. Although the law set forth a litany of criteria for a school district to be required to have its students reassigned to, and faculty rehired by, neighboring school districts, our Supreme Court found that there was only one school district in

_____

[15] 24 P.S. §§ 16-1607.1, 11–1113(b.2).

Pennsylvania that met, and would likely ever meet, the criteria of sections 1607.1 and 1113(b.2)—the Duquesne City School District. *Id.* Consequently, the Court determined that those provisions violated the constitutional prohibition of Article III, Section 32 against special legislation because the provisions were "always intended … to provide a remedy solely for the adverse circumstances obtaining within the Duquesne City School District upon elimination of its high school[.]"

Similarly, in *Hickok*, the law at issue, section 1707–B (the Reed Amendment) of the Education Empowerment Act,[16] set forth action and improvement plans for reinvigorating school districts that had a history of poor test performance. *Hickok*, 761 A.2d at 1135. The law, however, expressly provided for handling the Harrisburg School District differently from all other school districts in the event it became a district with a history of poor test performance. *Id.* at 1135-36. Our Supreme Court held that section 1707-B violated the constitutional prohibition of Article III, Section 32 against special legislation because the law could only possibly ever apply to one school district. *Id.* at 1136.

Unlike the laws at issue in *Zahorchak* and *Hickok*, section 6108 expressly applies to an entire population-based class of cities—cities of the first class—and there is no language in section 6108 precluding it from

---

16   No. 2000–16 (Act 16) and section 8.1 of Act 16 (the Educational Empowerment Act).

applying to other cities of the first class. *See* 18 Pa.C.S. § 6108. Thus, in alignment with the definition of a general law, section 6108 is a law dealing with and uniform in its application to all cities of the first class. *See Torbik*, 696 A.2d at 1146. Although the possibility that another city in Pennsylvania other than Philadelphia will become a city of the first class remains remote at the present time, section 6108 is not constructed in a manner such that it could only ever apply to Philadelphia.

Moreover, our Supreme Court has specifically stated that it is not the size of the class that is material when determining whether a law constitutes a local or special law as opposed to a general law, but rather whether that law applies uniformly to all members of a particular class. *See Torbik*, 696 A.2d at 1146. Thus, the fact that Philadelphia is the only city of the first class is immaterial to the determination of whether section 6108 is an unconstitutional local or special law. *See Wings Field Preservation Assocs., L.P. v. Commonwealth, Dept. of Transp.*, 776 A.2d 311, 318 (Pa. Cmwlth. 2001) ("A law's special or general nature is not dependent upon the size of the class which is not treated uniformly it is determined by that treatment's uniformity, or lack thereof, in relation to the entire class, notwithstanding the number of members therein.").[17]

---

[17] "This Court is not bound by the decisions of the Commonwealth Court. However, such decisions provide persuasive authority, and we may turn to our colleagues on the Commonwealth Court for guidance when appropriate." *Commonwealth v. Hunt*, 220 A.3d 582, 590 n.6 (Pa. Super. 2019).

Based on the foregoing, we conclude that section 6108 constitutes a general law, and does not violate the prohibition contained in Article III, Section 32 against local or special legislation. Accordingly, Livingston's final constitutional challenge to section 6108 fails.

## Conclusion

Livingston has failed to raise a meritorious challenge to either the denial of his suppression motion or to the constitutionality of section 6108. Accordingly, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/17/2024